Dana **SCHUMACHER**, Leroy **Hodge**, Appellants,

v.

Robert N.C. **NIX**, Jr., Chief Justice of the Supreme Court of Pennsylvania, Rolf Larsen, Justice of the Supreme Court of Pennsylvania, John P. Flaherty, Justice of the Supreme Court of Pennsylvania, James T. McDermott, Justice of the Supreme Court of Pennsylvania, Stephen A. Zappala, Justice of the Supreme Court of Pennsylvania, Nicholas P. Papadakos, Justice of the Supreme Court of Pennsylvania, Ralph J. Cappy, Justice of the Supreme Court of Pennsylvania, Patrick Tassos, Executive Director of the Pennsylvania Board of Law Examiners.

No. 91–3666.

United States Court of Appeals, Third Circuit.

Argued April 6, 1992.
Decided June 3, 1992.

---

Jules Lobel (argued), Pittsburgh, Pa., for appellants.

A. Taylor Williams (argued), Supreme Court of Pennsylvania, Philadelphia, Pa., for appellees.

Before: GREENBERG and SCIRICA, Circuit Judges, and DEBEVOISE, District Judge *.

## OPINION OF THE COURT

SCIRICA, Circuit Judge.

This case presents an equal protection challenge to Pennsylvania Bar Admission Rule 203(a)(2)(ii), which governs the eligibility of graduates of unaccredited law schools to sit for the Pennsylvania bar examination. The district court entered summary judgment for defendants on the ground that the Rule is rationally related to Pennsylvania's interest in securing mutual treatment for its attorneys seeking admission to the bars of other states. We will affirm.

I

Plaintiffs Dana Schumacher and Leroy Hodge are graduates of the People's College of Law in California, which is not accredited by the American Bar Association. They have taken and passed the California first-year law students' examination, professional responsibility examination, and general bar examination. Plaintiffs are members in good standing of the California bar, and have practiced law in that state for more than five years.

Plaintiffs moved to Pennsylvania in 1987. Since then they have been admitted to the bars of the United States District Court for the Western District of Pennsylvania, the United States Court of Appeals for the

---

\* The Honorable Dickinson R. Debevoise, United States District Judge for the District of New Jersey, sitting by designation.

Third Circuit, and the United States Supreme Court. Plaintiffs have been unable to gain admission to the Pennsylvania bar, however, because they are ineligible to sit for the Pennsylvania bar examination.[1]

As a general matter, only graduates of law schools accredited by the ABA are eligible to sit for the Pennsylvania bar examination. Pa.B.A.R. 203(a)(2)(i). There is an exception, however, for graduates of unaccredited law schools who are members in good standing of the bar of a "reciprocal

**1.** Schumacher applied to the Pennsylvania Board of Law Examiners for permission to sit for the bar examination, but her application was denied pursuant to Rule 203(a)(2)(ii); Hodge has not applied for permission to sit for the Pennsylvania bar examination, because he believes it would be futile. Because Schumacher has standing to maintain this action, and Schumacher and Hodge present identical challenges to Rule 203(a)(2)(ii), we need not consider whether Hodge would have standing to bring this action individually. *See Bowsher v. Synar,* 478 U.S. 714, 721, 106 S.Ct. 3181, 3185, 92 L.Ed.2d 583 (1986).

**2.** Rule 203. Admission of graduates of accredited and unaccredited institutions.

(a) *Bar Examination.* The general requirements for permission to sit for the bar examination are:

(1) Receipt of an undergraduate degree from an accredited college or university....

(2)(i) Except as provided in subparagraph 2(ii) of the Rule, completion of the study of law at and receipt without exception of an earned Bachelor of Laws or Juris Doctor degree from an *accredited* law school....; or

(2)(ii) Completion of the study of law at and receipt without exception of an earned Bachelor of Laws or Juris Doctors degree from an *unaccredited* law school located within the boundaries of the United States of America, provided that the applicant is a member of the bar of a *reciprocal state* and meets the following qualifications:

(A) Presentation of a certificate from the highest court or agency of such state having jurisdiction over admission to the bar and the practice of law stating that the applicant is in good standing at the bar of such court or such state.

(B) Presentation of proof satisfactory to the Board that the applicant, while continuously engaged in the practice of law in any state or states outside of this Commonwealth and subsequent to admission in a reciprocal state, has for a period of five years:

(i) practiced law in a reciprocal state or states outside this Commonwealth....

Pa.B.A.R. 203 (emphasis added).

state" and have practiced law there for five years. *Id.* 203(a)(2)(ii).[2] "Reciprocal state" is defined as "[a] state having a reciprocal agreement or arrangement with [Pennsylvania] concerning admission to the bar." *Id.* 102(a). In practice, the Pennsylvania Board of Law Examiners has accorded reciprocal status to those states which permit experienced Pennsylvania attorneys who are graduates of accredited law schools to waive into their bar without taking an examination.[3]

**3.** Stephen Bosch, a former secretary and treasurer of the Pennsylvania Board of Law Examiners, attested that, although Rule 102(a) calls for a "reciprocal agreement or arrangement," to obtain reciprocal status a state need only announce that it "wishes to be reciprocal as we commonly understand reciprocity."

Bosch explained the significance of the grant of reciprocal status as follows:

In its basic terms it meant that attorneys from the new reciprocal state and attorneys from Pennsylvania could apply to be admitted in each other [sic] states without having to take and pass the multistate bar examination. And, of course, *it meant for Pennsylvania that they could seek to be admitted in other states without have [sic] to sit for a bar examination,* and we in turn would then take in attorneys from the new reciprocal state and give them a license to practice law in Pennsylvania without having to take a bar examination and, of course, without having to be a resident of Pennsylvania.

(emphasis added). This view comports with that held by Bosch's predecessor, Susan L. Anderson, who in a memorandum to the Board of Law Examiners listed as reciprocal states those states which "require the attorney applicant to sit for an examination, either the bar examination or an attorney examination."

It is not clear from either Bosch's deposition testimony or Anderson's memorandum whether they were referring to Pennsylvania attorneys who are graduates of accredited law schools, unaccredited law schools, or both. However, as plaintiffs point out, the only consistent difference between how reciprocal and nonreciprocal states treat Pennsylvania attorneys is that reciprocal states allow experienced Pennsylvania attorneys who are graduates of accredited law schools to waive into their bar without taking an examination. Accordingly, we understand Bosch's and Anderson's references to be to Pennsylvania attorneys who are graduates of accredited law schools.

Defendants call into question Bosch's deposition testimony, because, as Bosch himself admitted, he left the Board of Law Examiners on "nonamicable" terms. However, defendants have not pointed to any evidence that conflicts

California is not considered a reciprocal state by the Board of Law Examiners, because it will not allow Pennsylvania attorneys, whether graduates of accredited law schools or not, to become members of its bar without taking an examination. Accordingly, although plaintiffs are members in good standing of the California bar and have practiced law there for five years, they are ineligible to sit for the Pennsylvania bar examination. To become eligible, plaintiffs would have to either obtain a degree from an accredited law school or become members in good standing of the bar of a reciprocal state and practice law there for five years. *See id.* 203(a)(2)(ii).

On August 29, 1990, plaintiffs filed this 42 U.S.C. § 1983 action in federal district court seeking a declaration that Rule 203(a)(2)(ii) is unconstitutional and an injunction preventing its enforcement. Defendants are the Chief Justice and Justices of the Pennsylvania Supreme Court, who promulgated Rule 203(a)(2)(ii), *see* 42 Pa. Cons.Stat.Ann. §§ 1701 & 1722(a)(1), and the Executive Director of the Pennsylvania Board of Law Examiners, who is responsible for implementing the Rule, *see* Pa. B.A.R. 104(c).

In their complaint, plaintiffs allege that Rule 203(a)(2)(ii) violates the Equal Protection Clause of the Fourteenth Amendment.

U.S. Const. amend. XIV, § 2.[4] They assert that the Rule substantially interferes with their fundamental right to interstate travel by discouraging them from moving to Pennsylvania, and is invalid under the strict scrutiny standard of equal protection analysis.[5] In the alternative, they contend that the Rule cannot pass the minimum rational basis test, because there is no logical connection between whether a state is considered reciprocal by the Pennsylvania Board of Law Examiners and whether it accords mutual treatment to Pennsylvania attorneys who are graduates of unaccredited law schools.

After both parties sought summary judgment, a magistrate judge recommended that summary judgment be granted for defendants. Rejecting plaintiffs' argument that strict scrutiny applied, he held that Rule 203(a)(2)(ii) passed muster under rational basis review. The district court issued a memorandum and order adopting the magistrate judge's recommendation. *Schumacher v. Nix,* No. 90–1431, 1991 WL 346074 (W.D.Pa. Aug. 27, 1991). This appeal followed.

## II

We have jurisdiction under 28 U.S.C.

---

with Bosch's testimony. Therefore, it is unrebutted.

4. The complaint also alleges that Rule 203(a)(2)(ii) violates the Privileges and Immunities Clause of Article IV, U.S. Const. art. IV, § 2, and the Due Process Clause of the Fourteenth Amendment, *id.* amend. XIV, § 2, of the Constitution. However, plaintiffs' privileges and immunities claim lacks merit, because plaintiffs are required to meet the same requirements for admission to the Pennsylvania bar under the Rule as Pennsylvania graduates of unaccredited law schools. *See Lutz v. City of York,* 899 F.2d 255, 262 (3d Cir.1990) ("[T]he purpose of the [Privileges and Immunities] [C]lause was simply 'to insure to a citizen of State A who ventures into State B the same privileges which the citizens of State B enjoy.'") (quoting *Toomer v. Witsell,* 334 U.S. 385, 395, 68 S.Ct. 1156, 1161–62, 92 L.Ed. 1460 (1948)). And because plaintiffs' substantive due process claim is amenable to an equal protection analysis, *see Jones v. Helms,* 452 U.S. 412, 101 S.Ct. 2434, 69 L.Ed.2d 118 (1981); Westen, *The Empty Idea of Equality,*

95 Harv.L.Rev. 537, 558–59 n. 69 (1982), plaintiffs have not pursued it separately.

5. On appeal, plaintiffs suggest that even if the strict scrutiny standard is not controlling, we should subject Rule 203(a)(2)(ii) to "heightened scrutiny." They cite *Lutz v. City of York,* 899 F.2d at 257, where we applied intermediate scrutiny to a municipal "cruising" ordinance prohibiting "unnecessary repetitive driving" in certain areas between the hours of 7:00 p.m. and 3:30 a.m. Significantly, the challenge in that case was predicated on the right to *intra* state travel, which we said emanated from the substantive component of the Fourteenth Amendment Due Process Clause. *Id.* at 268. By contrast, plaintiffs' challenge here is predicated on the right to *inter* state travel. As we discuss below, in reviewing challenges predicated on the right to interstate travel, the Supreme Court has applied either strict scrutiny or rational basis review. Accordingly, we reject plaintiffs' suggestion that intermediate scrutiny would be proper here.

§ 1291.[6] At issue is whether Rule 203(a)(2)(ii) violates plaintiffs' right to equal protection of the laws. Our review of the district court's grant of summary judgment for defendants is plenary. *Sacred Heart Medical Ctr. v. Sullivan,* 958 F.2d 537, 543 (3d Cir.1992). We apply the same principles governing the district court's determination whether to grant summary judgment, and must be convinced that defendants have successfully demonstrated "that there is no genuine issue as to any material fact and that [they are] ... entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

### A

■ The threshold question is what standard of equal protection analysis governs our review of Rule 203(a)(2)(ii). As a general matter, economic and social legislation[7] is subject to rational basis review, under which a law need only be "rationally related to a legitimate state interest." *City of New Orleans v. Dukes,* 427 U.S. 297, 303, 96 S.Ct. 2513, 2517, 49 L.Ed.2d 511 (1976) (per curiam). However, where such legislation establishes "a classification [that] trammels fundamental personal rights or is drawn upon inherently suspect distinctions such as race, religion, or alienage," *id.,* it must meet the strict scrutiny standard, under which a law must be narrowly tailored to further a compelling government interest. *See City of Cleburne v. Cleburne Living Ctr., Inc.,* 473 U.S. 432, 440, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985).

■ As we have noted, plaintiffs argue that we must subject Rule 203(a)(2)(ii) to strict scrutiny, because it substantially burdens their right to travel by deterring them from migrating to Pennsylvania. The district court disagreed, and applied rational basis review instead. It found the right to travel cases cited by plaintiffs inapposite, because Rule 203(a)(2)(ii) does not "condition the receipt of a benefit on a form of in-state residency." And even though the Rule has the "practical effect" of making plaintiffs ineligible to practice law in Pennsylvania, the district court concluded that it does not so impinge plaintiffs' "freedom of movement" as to trigger strict scrutiny. We agree.

"[F]reedom to travel throughout the United States has long been recognized as a basic right under the Constitution." *United States v. Guest,* 383 U.S. 745, 758, 86 S.Ct. 1170, 1178, 16 L.Ed.2d 239 (1966). Although the Supreme Court has declined to "ascribe the source of this right ... to a particular constitutional provision," *Shapiro v. Thompson,* 394 U.S. 618, 630, 89 S.Ct. 1322, 1329, 22 L.Ed.2d 600 (1969), it has been said that the right to interstate travel finds its "most forceful expression in the context of equal protection analysis," *Zobel v. Williams,* 457 U.S. 55, 67, 102 S.Ct. 2309, 2316, 72 L.Ed.2d 672 (1982) (Brennan, J., concurring). *Cf. Lutz v. City of York,* 899 F.2d 255, 258–68 (3d Cir.1990) (concluding

---

**6.** The *Rooker–Feldman* doctrine presents no jurisdictional obstacle here. Under that doctrine, "federal district courts lack subject matter jurisdiction to review final adjudications of a state's highest court or to evaluate constitutional claims that are 'inextricably intertwined with the state court's [decision] in a judicial proceeding.'" *Blake v. Papadakos,* 953 F.2d 68, 71 (3d Cir.1992) (quoting *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983); *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923)). Although Schumacher applied for and was denied permission to sit for the Pennsylvania bar examination, the complaint before us presents a general constitutional challenge to Rule 203(a)(2)(ii). As such, we do not believe this action is so "inextricably intertwined" with the denial of Schumacher's application that it

divests us of subject matter jurisdiction under *Rooker–Feldman. Cf. Lowrie v. Goldenhersh,* 716 F.2d 401, 404–08 (7th Cir.1983).

**7.** We are not reviewing legislation in the traditional sense. Rule 203(a)(2)(ii) was promulgated by the justices of the Pennsylvania Supreme Court pursuant to the authority delegated to them by the Pennsylvania General Assembly. *See* 42 Pa.Cons.Stat.Ann. §§ 1701 & 1722(a)(1). However, the fact that the Rule was not enacted by a legislative body does not affect our equal protection inquiry. *See Delaware River Basin Comm'n v. Bucks County,* 641 F.2d 1087, 1093 n. 11 (3d Cir.1981). *See also* Tussman & tenBroek, *The Equal Protection of the Laws,* 37 Cal.L.Rev. 341, 353 (1949).

that the right to *intra*state travel emanates from the substantive component of the Fourteenth Amendment Due Process Clause).

The Supreme Court's modern right to travel jurisprudence originated in *Shapiro v. Thompson.* There the Supreme Court struck down under strict scrutiny a durational residency requirement for welfare benefits. Following *Shapiro,* the Court applied strict scrutiny in striking down durational residency requirements to vote, *Dunn v. Blumstein,* 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972); and to receive free nonemergency medical care, *Memorial Hosp. v. Maricopa County,* 415 U.S. 250, 258, 94 S.Ct. 1076, 1082, 39 L.Ed.2d 306 (1974). *But cf. Sosna v. Iowa,* 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975) (upholding durational residency requirement for in-state divorce).[8]

In *Zobel v. Williams,* however, the Court employed rational basis review in striking down a legislative scheme for distribution of surplus oil revenues to citizens based on duration of residency. Three years later, in *Hooper v. Bernalillo County Assessor,* 472 U.S. 612, 105 S.Ct. 2862, 86 L.Ed.2d 487 (1985), the Court applied rational basis review in striking down a limited property tax exemption for Vietnam veterans with residency prior to May 8, 1976. In *Attorney General of New York v. Soto–Lopez,* 476 U.S. 898, 106 S.Ct. 2317, 90 L.Ed.2d 899 (1986), a plurality of the Court applied strict scrutiny to a civil service preference for Vietnam veterans with residency at the time they entered military service, but the fifth and sixth votes for striking down the preference were cast by Justices applying rational basis review.

The Supreme Court has yet to articulate why it has applied rational basis review in some right to travel cases and strict scrutiny in others, except to say that where a law cannot meet the minimum rationality requirement there is no need to undertake a more searching inquiry. *See Zobel,* 457 U.S. at 60–61, 102 S.Ct. at 2312–13; *Soto–Lopez,* 476 U.S. at 912, 106 S.Ct. at 2325–26 (Burger, C.J., concurring). Plaintiffs maintain that the proper level of equal protection analysis is dependent on the degree to which the right to travel is infringed, and, because Rule 203(a)(2)(ii) substantially burdens their right to travel, we must subject it to strict scrutiny. Although the extent to which the right to travel is impinged may affect the standard of equal protection review, we cannot agree that the strict scrutiny standard applies here.

As the preceding discussion illustrates, the *Shapiro* line of cases has, without exception, involved challenges to state laws that create "distinctions between newcomers and longer term residents." *Zobel,* 457 U.S. at 60 n. 6, 102 S.Ct. at 2312–13 n. 6. As the district court observed, however, Rule 203(a)(2)(ii) neither conditions the receipt of in-state benefits on residency nor classifies applicants on the basis of residency. Under the Rule, Pennsylvania graduates of unaccredited law schools must meet the same requirements to sit for the Pennsylvania bar examination as nonresident graduates of unaccredited law schools.

This is not to say that Rule 203(a)(2)(ii) is no impediment to plaintiffs' freedom of movement. Surely, the Rule has some deterrent effect on nonresident attorneys who wish to migrate to Pennsylvania but choose not to because they are ineligible to sit for the Pennsylvania bar examination. However, the Constitution does not guarantee that citizens of State A may move to State B and enjoy the same privileges they did as citizens of State A, only that citizens of State A may move to State B and be treated on similar terms as the citizens of State B. *See Toomer v. Witsell,* 334 U.S. 385, 395, 68 S.Ct. 1156, 1161–62, 92 L.Ed. 1460 (1948) (construing U.S. Const. Art. IV,

---

8. The *Sosna* Court applied a less searching equal protection review. The Court said that the durational residency requirement was constitutional, because it could "reasonably be justified" by the circumstances attendant to divorce and "furthers the State's parallel interests in avoiding officious intermeddling in matters in which another State has a paramount interest, and in minimizing the susceptibility of its own divorce decrees to collateral attack." 419 U.S. at 406–407, 95 S.Ct. at 560–561. This analysis seems closer to rational basis review than strict scrutiny.

§ 2). Nor does it "require that because a lawyer has been admitted to the bar of one State, he or she must be allowed to practice in another." *Leis v. Flynt*, 439 U.S. 438, 443, 99 S.Ct. 698, 701, 58 L.Ed.2d 717 (1979) (per curiam).

██  Therefore, because Rule 203(a)(2)(ii) neither establishes a classification based on residency nor erects a barrier to migration, we believe rational basis review applies here.[9] We are not alone in this view. The courts that have considered equal protection challenges to state bar rules have uniformly applied rational basis review. *See, e.g., Nordgren v. Hafter*, 789 F.2d 334 (5th Cir.), *cert. denied*, 479 U.S. 850, 107 S.Ct. 177, 93 L.Ed.2d 113 (1986); *Lupert v. California State Bar*, 761 F.2d 1325 (9th Cir.), *cert. denied and appeal dismissed*, 474 U.S. 916, 106 S.Ct. 241, 88 L.Ed.2d 251 (1985); *Salibra v. Supreme Court of Ohio*, 730 F.2d 1059 (6th Cir.), *cert. denied*, 469 U.S. 917, 105 S.Ct. 295, 83 L.Ed.2d 230 (1984); *Lowrie v. Goldenhersh*, 716 F.2d 401 (7th Cir.1983). And at least two courts have embraced the right to travel analysis we adopt here.

In *Moore v. Supreme Court of South Carolina*, 447 F.Supp. 527 (D.S.C.1977), *aff'd without op.*, 577 F.2d 735 (4th Cir.), *cert. denied*, 439 U.S. 984, 99 S.Ct. 574, 58 L.Ed.2d 655 (1978), the district court dismissed a right to travel challenge to a South Carolina bar rule that made *all* graduates of unaccredited law schools ineligible to practice law in that state. The plaintiff in *Moore* asserted that the rule impinged his right to travel by not allowing him "to pursue his chosen vocation" in South Carolina, thus triggering strict scrutiny. *Id.* at 530. The district court disagreed.

It noted the "crucial factual distinction" between laws that create classifications based on residency, like those challenged in the "*Shapiro* line of cases," and laws that create classifications unrelated to residency. Because the challenged rule distinguished only "between those who have graduated from ABA approved law schools and those who have not," the district court found the Supreme Court's right to travel cases "inapplicable." Therefore, although the rule "clearly discourage[d] plaintiff from traveling to South Carolina for the purpose of establishing a residence," the court held that rational basis review applied. *Id.*

The *Moore* court relied in part on *Hawkins v. Moss*, 503 F.2d 1171 (4th Cir.1974), *cert. denied*, 420 U.S. 928, 95 S.Ct. 1127, 43 L.Ed.2d 400 (1975). There the court of appeals rejected a right to travel challenge to a South Carolina bar rule that exempted from the general examination requirement experienced attorneys from reciprocal states but not similarly situated attorneys from nonreciprocal states. The court stated:

> [T]he "right to travel" ... is not to be construed to mean that a citizen carries with him from state to state an absolute right of comity to practice, not a "common occupation," but a profession, which is properly subject to state regulation, in any state to which he travels.... The exercise by a state of power to regulate *reasonably* the practice of law within its jurisdiction and to require of any applicant, whether a resident or a migrant, that he demonstrate sufficient proficiency in the law as a prerequisite to a license to practice, is, as we have seen perfectly permissible and represents no violation ... of the Fourteenth Amendment.

*Id.* at 1178–79 (emphasis added). *Cf. Shenfield v. Prather*, 387 F.Supp. 676, 683–86 (N.D.Miss.1974) (undertaking right to travel analysis of state bar rule requiring attorneys from nonreciprocal states to sit for

---

**9.** Plaintiffs have not alleged that any other fundamental right is impinged by Rule 203(a)(2)(ii). We note, however, that "the right to practice law is not a fundamental right for purposes of ... equal protection analysis." *Edelstein v. Wilentz*, 812 F.2d 128, 132 (3d Cir. 1987). *Cf. Supreme Court of New Hampshire v. Piper*, 470 U.S. 274, 281, 105 S.Ct. 1272, 1276–77,

84 L.Ed.2d 205 (1985) (suggesting that the opportunity to practice law *is* fundamental for purposes of a Privileges and Immunities Clause analysis). Nor have plaintiffs alleged that they are members of a suspect class or that the Rule was enacted purposefully to discourage migration.

bar examination but concluding that rational basis review applied).

Finally, our conclusion that rational basis review applies here squares with the deference the Supreme Court has long afforded states in regulating the practice of law and admission to the bar. *See Schware v. Board of Bar Examiners*, 353 U.S. 232, 239, 77 S.Ct. 752, 756, 1 L.Ed.2d 796 (1957) ("A State can require high standards of qualification, such as good moral character or proficiency in its law, before it admits an applicant to the bar, but any qualification must have a *rational* connection with the applicant's fitness or capacity to practice law.") (emphasis added). *See also District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 484 n. 16, 103 S.Ct. 1303, 1315–16 n. 16, 75 L.Ed.2d 206 (1983); *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 434–35, 102 S.Ct. 2515, 2522–23, 73 L.Ed.2d 116 (1982).

## B

Having concluded that rational basis review governs our equal protection analysis of Rule 203(a)(2)(ii), the next question is whether the Rule passes muster under this standard. The district court determined that Rule 203(a)(2)(ii) is rationally related to Pennsylvania's interest in securing mutual treatment for its attorneys seeking admission to the bars of other states. Plaintiffs argue that the Rule cannot further Pennsylvania's reciprocity interest, because the Pennsylvania Board of Law Examiners has not conditioned the grant of reciprocal status on whether a state accords mutual treatment to Pennsylvania attorneys who are graduates of unaccredited law schools.

State laws that neither employ a suspect classification nor impinge a fundamental right are "entitled to a presumption of validity against attack under the Equal Protection Clause." *Parham v. Hughes*, 441 U.S. 347, 351, 99 S.Ct. 1742, 1745, 60 L.Ed.2d 269 (1979). *Cf. City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. at 440, 105 S.Ct. at 3254 ("[T]he Constitution presumes that even improvident decisions will eventually be rectified by the demo-cratic processes."). This presumption finds its expression in the rational basis test, which requires only that a law "classify the persons it affects in a manner rationally related to legitimate governmental objectives." *Schweiker v. Wilson*, 450 U.S. 221, 230, 101 S.Ct. 1074, 1080–81, 67 L.Ed.2d 186 (1981).

Rational basis review accords great deference "to legislative determinations as to the desirability of particular statutory discriminations." *City of New Orleans v. Dukes*, 427 U.S. at 303, 96 S.Ct. at 2516. Under this standard, the Supreme Court has said that "a statutory distinction does not violate the Equal Protection Clause 'if any state of facts reasonably may be conceived to justify it,'" *Sullivan v. Stroop*, 496 U.S. 478, 110 S.Ct. 2499, 2504, 110 L.Ed.2d 438 (1990) (quoting *Bowen v. Gilliard*, 483 U.S. 587, 601, 107 S.Ct. 3008, 3017, 97 L.Ed.2d 485 (1987)), and that "rational distinctions may be made with substantially less than mathematical exactitude," *City of New Orleans*, 427 U.S. at 303, 96 S.Ct. at 2517.

Of course, rational basis review is not "entirely 'toothless.'" *Murillo v. Bambrick*, 681 F.2d 898, 905 n. 15 (3d Cir.), *cert. denied*, 459 U.S. 1017, 103 S.Ct. 378, 74 L.Ed.2d 511 (1982). "A classification 'must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike.'" *Reed v. Reed*, 404 U.S. 71, 76, 92 S.Ct. 251, 254, 30 L.Ed.2d 225 (1971) (quoting *F.S. Royster Guano Co. v. Virginia*, 253 U.S. 412, 415, 40 S.Ct. 560, 561–62, 64 L.Ed. 989 (1920)). Laws that cannot meet this minimum rationality requirement are constitutionally infirm. *See, e.g., Jimenez v. Weinberger*, 417 U.S. 628, 94 S.Ct. 2496, 41 L.Ed.2d 363 (1974); *Delaware River Basin Comm'n v. Bucks County*, 641 F.2d 1087 (3d Cir.1981).

To determine whether Rule 203(a)(2)(ii) passes rational basis review, we must first "identify with particularity the precise classification alleged to be irrational." *Murillo*, 681 F.2d at 906. The challenged classi-

fication here is between similarly situated attorneys in reciprocal and nonreciprocal states who have graduated from unaccredited law schools, are members in good standing of the bar, and have practiced law for five years. Under Rule 203(a)(2)(ii), only experienced attorneys who are graduates of unaccredited law schools from reciprocal states are eligible to sit for the Pennsylvania bar examination.

As we have noted, although plaintiffs are members in good standing of the California bar and have practiced law there for five years, they are ineligible to sit for the Pennsylvania bar examination because California is not considered a reciprocal state by the Pennsylvania Board of Law Examiners. Of course, as defendants point out, plaintiffs would be eligible to sit for the Pennsylvania bar examination if they had graduated from an accredited law school. *See* Pa.B.A.R. 203(a)(2)(i). But this is not relevant to our equal protection inquiry. Having decided to allow some graduates of unaccredited law schools to sit for its bar examination (*i.e.*, those who are experienced attorneys from reciprocal states), Pennsylvania cannot deny this privilege to similarly situated graduates of unaccredited law schools (*i.e.*, those who are experienced attorneys from nonreciprocal states) without meeting the minimum rationality

requirement. *See Lindsey v. Normet,* 405 U.S. 56, 77, 92 S.Ct. 862, 876, 31 L.Ed.2d 36 (1972); *Hetherton v. Sears, Roebuck & Co.,* 652 F.2d 1152, 1157–58 (3d Cir.1981).[10]

■ We must decide whether Pennsylvania has a legitimate interest in classifying experienced attorneys who are graduates of unaccredited law schools on the basis of whether they are members of the bar of a reciprocal state, and, if so, whether Rule 203(a)(2)(ii) is rationally related to this interest. It is undisputed that the Rule rests upon a legitimate state interest. As the district court observed, the Rule is intended to "secure[ ] for Pennsylvania attorneys who decide to relocate, the advantage of favorable terms of admission to another state's bar by offering that same advantage to attorneys of such other states that will reciprocate." And it is established that such reciprocity provisions are a valid exercise of state power, because they help ease the burdens of relocation for resident attorneys seeking admission to the bars of other states. *See Hawkins v. Moss,* 503 F.2d at 1176–77; *Goldsmith v. Pringle,* 399 F.Supp. 620, 623 (D.Colo.1975).[11]

The pivotal question here is whether Rule 203(a)(2)(ii) reasonably furthers Pennsylvania's interest in securing mutual treat-

---

**10.** Although we need not decide the issue, it would seem settled that Pennsylvania could require all candidates for admission to the bar to have graduated from an accredited law school. *See Potter v. New Jersey Supreme Court,* 403 F.Supp. 1036, 1037–38 (D.N.J.1975), *aff'd without op.,* 546 F.2d 418 (3d Cir.1976).

**11.** Defendants argue that Rule 203(a)(2)(ii) also promotes Pennsylvania's interest in ensuring a competent bar. Although this too is a valid state objective, *see Lowrie v. Goldenhersh,* 716 F.2d at 409, we cannot say that Rule 203(a)(2)(ii) furthers it. The Rule evinces an administrative judgment that graduates of unaccredited law schools who are members in good standing of the bar of another state and have practiced law there for five years are competent to practice law if they pass the Pennsylvania bar examination. We can discern no reason why, as a general matter, experienced graduates of unaccredited law schools from reciprocal states would be more competent to practice law than experienced graduates of unaccredited law schools from nonreciprocal states.

Citing *Appeal of Murphy,* 482 Pa. 43, 393 A.2d 369 (1978), *cert. denied and appeal dismissed sub nom. Murphy v. Pennsylvania State Board of Bar Examiners,* 440 U.S. 901, 99 S.Ct. 1204, 59 L.Ed.2d 449 (1979), defendants maintain that graduates of unaccredited law schools in certain states—namely, California—are less qualified than graduates of unaccredited law schools in other states, because of the manner in which these states regulate (or, rather, fail to regulate) their unaccredited law schools. However, Rule 203(a)(2)(ii) does not distinguish between graduates of unaccredited law schools in states that closely regulate their unaccredited law schools and graduates of unaccredited law schools in states that do not. Nor is there any evidence that the Pennsylvania Board of Law Examiners has attempted to do so in determining which states should be accorded reciprocal status. Therefore, even if it can be said that graduates of unaccredited law schools in certain states are less qualified than graduates of unaccredited law schools in other states, the Rule would not prevent these graduates from becoming members of the Pennsylvania bar.

ment for its attorneys seeking admission to the bars of other states. As we have noted, plaintiffs assert that the Rule is not rationally related to this objective, because there is no logical connection between whether a state is considered reciprocal by the Pennsylvania Board of Law Examiners and whether that state accords mutual treatment to Pennsylvania attorneys who are graduates of unaccredited law schools. Neither the district court nor defendants squarely addressed this argument.

Moreover, the cases rejecting equal protection challenges to reciprocity provisions similar to Rule 203(a)(2)(ii) provide no assistance on this point. *See, e.g., Hawkins v. Moss*, 503 F.2d 1171 (rejecting challenge to state bar rule exempting from general bar examination requirement experienced attorneys from reciprocal states); *Shenfield v. Prather*, 387 F.Supp. 676 (same). The focus in those cases was on whether the reciprocity provisions were enacted pursuant to a legitimate state interest, not whether they were rationally related to that interest. Therefore, the courts had no occasion to consider the type of challenge presented here.

On its face, Rule 203(a)(2)(ii) would seem to further Pennsylvania's reciprocity interest. It distinguishes between similarly situated graduates of unaccredited law schools from reciprocal and nonreciprocal states, and "reciprocal state" is defined as "[a] state having a reciprocal agreement or arrangement with [Pennsylvania] concerning admission to the bar." Pa.B.A.R. 102(a). Accordingly, under the conventional notion of "reciprocity" at least,[12] it would seem clear that Pennsylvania could reasonably have conceived that the Rule would promote its interest in securing mutual treatment for its attorneys seeking admission to the bars of other states.

But this does not end the inquiry, for a classification which is constitutional on its face may be unconstitutional as applied. *See Yick Wo v. Hopkins*, 118 U.S. 356, 373–74, 6 S.Ct. 1064, 1072–73, 30 L.Ed. 220 (1886). And even under rational basis review, "the constitutionality of a statute predicated upon the existence of a particular state of facts may be challenged by showing to the court that those facts have ceased to exist," *United States v. Carolene Prods. Co.*, 304 U.S. 144, 153, 58 S.Ct. 778, 784, 82 L.Ed. 1234 (1938), though such challenges cannot succeed where it is "at least debatable" that the classification is rational, *Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456, 464, 101 S.Ct. 715, 723–24, 66 L.Ed.2d 659 (1981). *See also* Tussman & tenBroek, *supra* note 6, at 367–68.

Here it is the implementation of Rule 203(a)(2)(ii) by the Pennsylvania Board of Law Examiners which has given rise to plaintiffs' equal protection challenge. As plaintiffs point out, it is difficult to glean any nexus between whether a state has reciprocity with Pennsylvania and whether it accords mutual treatment to Pennsylvania attorneys who are graduates of unaccredited law schools. Of the twenty-six jurisdictions that had reciprocity with Pennsylvania in July 1987,[13] twelve *would not* allow Pennsylvania attorneys who are graduates of unaccredited law schools to become members of their bar;[14] and of the jurisdictions that did not have reciprocity at that time, ten *would* permit Pennsylvania attorneys who are graduates of unaccredited law schools to become members of their

---

**12.** *Webster's Third New International Dictionary* 1895 (1964) defines "reciprocity" as "a mutual exchange of courtesies between two states or institutions; *specif.:* a recognition by each state or institution of the validity of licenses or privileges granted by the other to its citizens or members."

**13.** These jurisdictions were Alaska, Colorado, Connecticut, District of Columbia, Illinois, Indiana, Iowa, Kentucky, Michigan, Minnesota, Missouri, Montana, Nebraska, New York, North Carolina, North Dakota, Ohio, Oklahoma, Rhode Island, Tennessee, Texas, Vermont, Virginia, West Virginia, Wisconsin, and Wyoming.

**14.** These states are Illinois, Rules 703 and 705; Kentucky, Rules 2.070 and 2.110; Michigan, Rules 2(B) and 5(A); Minnesota, Rule II; Montana, Section I(1); New York, Rule 520.2–.4; North Carolina, Section .0702; North Dakota, Rule 1; Ohio, Rule 1, Section 1(c); Oklahoma, Rule 2(2); Tennessee, Rule 7, § 2.02; and Wyoming, Rule 5(e).

bar.[15]

As plaintiffs point out, the only uniform difference between how reciprocal and non-reciprocal states treat Pennsylvania attorneys is that reciprocal states allow experienced Pennsylvania attorneys who are graduates of accredited law schools to waive into their bar without taking an examination. Therefore, it would seem that the Board of Law Examiners has conditioned the grant of reciprocal status on whether a state accords mutual treatment to Pennsylvania attorneys who are graduates of accredited law schools without regard to whether that state accords mutual treatment to Pennsylvania attorneys who are graduates of unaccredited law schools.[16] As such, plaintiffs argue that Rule 203(a)(2)(ii) cannot further the state's interest in securing mutual treatment for its attorneys who are graduates of unaccredited law schools.

Given the lack of nexus between whether a state is considered reciprocal by the Board of Law Examiners and whether it accords similar treatment to Pennsylvania attorneys who are graduates of unaccredited law schools, we agree that it is difficult to see how Pennsylvania's reciprocity interest is furthered as to these attorneys.[17]

However, this does not decide the constitutionality of Rule 203(a)(2)(ii), because plaintiffs have framed Pennsylvania's reciprocity interest too narrowly. Pennsylvania has a legitimate interest in securing mutual treatment for *all* its attorneys seeking admission to the bars of other states, whether they are graduates of accredited or unaccredited law schools. Therefore, even if Rule 203(a)(2)(ii) does not promote Pennsylvania's reciprocity interest as to its attorneys who are graduates of unaccredited law schools, we think the Rule would pass rational basis review if it furthered the state's reciprocity interest as to its attorneys who are graduates of accredited law schools.

Viewed in this light, we believe Rule 203(a)(2)(ii) is rationally related to Pennsylvania's reciprocity interest. By allowing attorneys who are graduates of unaccredited law schools from reciprocal states to sit for its bar examination, Pennsylvania may entice states to enter into reciprocal agreements with it and thereby promote its interest in securing similar treatment for its attorneys who are graduates of accredited law schools. We think it sufficient, for purposes of rationality review, that Rule

---

**15.** These states are Arizona, Rule 34(c)(1)(D); California, Rule IV; Florida, Article III(c); Hawaii, Rule 1(c); Maine, Rule 10(c)(3); Maryland, Rule 13(a); New Mexico, Rule 15–103(B)(2); Oregon, Rules 2.25 and 2.30; Utah, Rule 4; and Washington, Rule 3(b)(2).

**16.** It is not clear from the record whether there are in fact Pennsylvania attorneys who are graduates of unaccredited law schools. As we have noted, Rule 203(a)(2)(ii) is the exception to Pennsylvania's general policy that graduates of unaccredited law schools are ineligible to sit for the Pennsylvania bar examination. Accordingly, it would seem that the only way in which a graduate of an unaccredited law school may become a member of the Pennsylvania bar is by becoming a member in good standing of the bar of a reciprocal state, practicing law there for five years, and passing the Pennsylvania bar examination and other character and fitness requirements. The record does not indicate how many graduates of unaccredited law schools have become members of the Pennsylvania bar through this process. Although we assume there are some, we note that, if there were no Pennsylvania attorneys who are graduates of unaccredited law schools, it would of

course be reasonable for the Board of Law Examiners not to condition the grant of reciprocal status on whether states seeking reciprocity accord mutual treatment to such attorneys.

**17.** We note, however, that although Rule 203(a)(2)(ii) may not directly further Pennsylvania's reciprocity interest as to its attorneys who are graduates of unaccredited law schools, it does not undermine it either. The fact is that many reciprocal states would allow Pennsylvania attorneys who are graduates of unaccredited law schools to sit for their bar examination. It is possible, therefore, that the Rule indirectly furthers Pennsylvania's reciprocity interest as to its attorneys who are graduates of unaccredited law schools by setting an example for other jurisdictions to follow. In any event, because we believe, for the reasons we express below, that Rule 203(a)(2)(ii) promotes Pennsylvania's reciprocity interest as to its attorneys who are graduates of accredited law schools, we need not decide whether this indirect effect, standing alone, would satisfy the minimum rationality requirement.

203(a)(2)(ii) furthers Pennsylvania's reciprocity interest in this respect.

Relying on dictum in *Medora v. Colautti*, 602 F.2d 1149 (3d Cir.1979),[18] plaintiffs argue that Pennsylvania cannot "hold out-of-state non–ABA law school graduates hostage in order to achieve favorable treatment for its experienced lawyers who graduated from ABA–approved law schools." But although Rule 203(a)(2)(ii) may advance the interests of Pennsylvania attorneys who are graduates of accredited law schools and not those who are graduates of unaccredited law schools, there is no evidence that Pennsylvania intended to "harm" its attorneys who are graduates of unaccredited law schools to advance the interests of its attorneys who are graduates of accredited law schools. *Cf. United States Dep't of Agric. v. Moreno*, 413 U.S. 528, 93 S.Ct. 2821, 37 L.Ed.2d 782 (1973).[19] And at least under rational basis review, it is clear that states may draw classifications "with substantially less than mathematical exactitude," *City of New Orleans*, 427 U.S. at 303, 96 S.Ct. at 2517, even though, in practice, such classifications result in "some inequality," *McGowan v. Maryland*, 366 U.S. 420, 425–26, 81 S.Ct. 1101, 1104–05, 6 L.Ed.2d 393 (1961).

Accordingly, we hold that Rule 203(a)(2)(ii) meets the minimum rationality requirement. There is little question that Pennsylvania could further advance its reciprocity interest by consistently according reciprocal status on the basis of whether a state treats Pennsylvania attorneys who are graduates of unaccredited as well as accredited law schools on similar terms. However, we will not second guess the manner in which Pennsylvania has chosen to implement Rule 203(a)(2)(ii), where that Rule bears at least some reasonable relation to Pennsylvania's interest in securing mutual treatment for its attorneys seeking admission to the bars of other states. Therefore, in light of the deference we generally accord states as to economic and social matters and Pennsylvania's "especially great" interest in regulating its bar, *Goldfarb v. Virginia State Bar*, 421 U.S. 773, 792, 95 S.Ct. 2004, 2015–16, 44 L.Ed.2d 572 (1975), we cannot say that Rule 203(a)(2)(ii) is unconstitutional.

---

**18.** *Medora* involved an equal protection challenge to a Pennsylvania regulation requiring all applicants for general assistance benefits for the blind, aged, or disabled to apply first for federal Supplemental Security Income (SSI) benefits. Under the regulation, applicants who were found to be blind, aged, or disabled yet ineligible for SSI benefits because they did not meet the more stringent federal "need criteria," were barred from applying for Pennsylvania general assistance benefits even if they qualified as "needy" under the state program. Because the regulation bore no rational relation to Pennsylvania's stated objective of providing "assistance to all of [the State's] needy and distressed," we struck it down under rational basis review. 602 F.2d at 1152.

In so holding, we rejected the "suggestion" that the regulation would be valid if Pennsylvania's aim in enacting it was to encourage the federal government to lower its need criteria. "If such were the case," we said, Pennsylvania "would essentially be in the position of 'shooting hostages' in an attempt to bring about what it considered to be a politically desirable result." *Id.* at 1155 n. 14. And "the intentional harming of a group to further some other governmental interest is not a rational means to further that other interest." *Id.*

**19.** *Moreno* involved an equal protection challenge to § 3(e) of the Food Stamp Act of 1964, which "exclude[d] from participation in the food stamp program any household containing an individual who is unrelated to any other member of the household." 413 U.S. at 529, 93 S.Ct. at 2823. There was some suggestion in the legislative history to § 3(e) that the requirement that participating households consist of related individuals was drawn "to prevent so-called 'hippies' and 'hippie communes' from participating in the food stamp program." *Id.* at 534, 93 S.Ct. at 2826 (citation omitted). The Court made clear this objective was not permissible.

> [I]f the constitutional conception of "equal protection of the laws" means anything, it must at the very least mean that a bare congressional desire to harm a politically unpopular group cannot constitute a *legitimate* governmental interest. As a result, "[a] purpose to discriminate against hippies cannot, in and of itself and without reference to some independent considerations in the public interest, justify the 1971 amendment [to the Act]."

*Id.* at 534–35, 93 S.Ct. at 2826 (emphasis in original) (citation omitted). By contrast, here there is no evidence that Pennsylvania enacted Rule 203(a)(2)(ii) intentionally to harm its attorneys who are graduates of unaccredited law schools, and it is clear that Pennsylvania's reciprocity interest is legitimate.

### III

For the foregoing reasons, we will affirm the district court's order granting summary judgment for defendants.