PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 11-4206

_____

PATRICK S. CONNELLY,
                              Appellant
v.

THE STEEL VALLEY SCHOOL DISTRICT

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 11-cv-00851)
District Judge:  Honorable Gary L. Lancaster

_____

Argued October 24, 2012
Before:  HARDIMAN, GREENAWAY, JR., and
VANASKIE, *Circuit Judges*.

(Filed: January 24, 2013)

Samuel J. Cordes [Argued]
Christine T. Elzer
Samuel J. Cordes & Associates
245 Fort Pitt Boulevard
Pittsburgh, PA 15222-0000
        *Attorneys for Plaintiff-Appellant*

William C. Andrews
Anthony G. Sanchez [Argued]
Amie A. Thompson
Andrews & Price
1500 Ardmore Boulevard
Suite 506
Pittsburgh, PA 15221-0000
          *Attorneys for Defendant-Appellee*

---

OPINION OF THE COURT

---

HARDIMAN, *Circuit Judge*.

The question presented by this appeal is whether a Pennsylvania public school district violates the Constitution when it sets teacher salaries based, in part, on prior in-state teaching experience. We hold it does not.

I

In September 2006, the Steel Valley School District hired Patrick Connelly as a sixth grade teacher. Steel Valley pays its teachers pursuant to a salary scale based on their education and years of experience. At the time he was hired, Connelly had nine years of teaching experience—all in Maryland. Because Connelly acquired his teaching experience outside Pennsylvania, however, Steel Valley credited him with only one year. Other new teachers with like experience acquired within Pennsylvania (but not at Steel

2

Valley) received at least partial credit for each year they had taught.

Because Steel Valley gave Connelly only one year of credit, his initial annual salary was $38,023, which was substantially less than the $49,476 Connelly alleged he would have received had Steel Valley given him full credit for his experience. As time passed, Connelly's initial salary determination continued to adversely affect his pay. During the 2010–11 academic year, Connelly's salary was approximately $22,000 less than it would have been had he received full credit in 2006.

In June 2011, Connelly filed a complaint in the United States District Court for the Western District of Pennsylvania asserting two Fourteenth Amendment claims pursuant to 42 U.S.C. § 1983. Specifically, Connelly argued that Steel Valley's failure to fully credit his out-of-state teaching experience violated his right to interstate travel under the Privileges and Immunities Clause and denied him equal protection of the law. The District Court granted Steel Valley's motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, holding that Connelly "does not state a cognizable Fourteenth Amendment claim because the classification alleged is based on location of teaching experience, not residency." *Connelly v. Steel Valley Sch. Dist.*, No. 11-851, 2011 WL 5024415, at *2 (W.D. Pa. Oct. 20, 2011). The Court dismissed Connelly's complaint with prejudice, holding that any amendment would be futile. *Id.* at *8. This appeal followed.

II

3

The District Court had subject matter jurisdiction over this case pursuant to 28 U.S.C. §§ 1331 and 1343. We have appellate jurisdiction under 28 U.S.C. § 1291.

We exercise plenary review over the grant of a motion to dismiss. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 206 (3d Cir. 2009). To survive a motion to dismiss, the plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). The plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. This standard requires the plaintiff to show "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

*Twombly* and *Iqbal* require us to take the following three steps to determine the sufficiency of a complaint:

> First, the court must take note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

*Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011) (quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010)) (alterations and internal quotation marks omitted).

4

## III

Connelly claims Steel Valley's salary scale impaired his right to travel interstate in violation of the Privileges and Immunities Clause of Article IV (as incorporated through the Fourteenth Amendment) and the Equal Protection Clause. We review both of Connelly's claims under the same standard because "the right to interstate travel finds its 'most forceful expression in the context of equal protection analysis.'" *Schumacher v. Nix*, 965 F.2d 1262, 1266 (3d Cir. 1992) (quoting *Zobel v. Williams*, 457 U.S. 55, 67 (1982) (Brennan, J., concurring)).

## A

We begin by considering which equal protection standard governs our review of Steel Valley's pay scale. The parties vigorously dispute this point because the standard of review (*i.e.*, rational basis review or strict scrutiny) is often outcome determinative. *See* Laurence H. Tribe, American Constitutional Law §16-30, at 1089 (1st ed. 1978) (noting strict scrutiny is a "virtual death-blow"); Laurence H. Tribe, American Constitutional Law §16-2, at 1442–43 (2d ed. 1988) ("The traditional deference *both* to legislative purpose *and* to legislative selections among means continues . . . to make the rationality requirement largely equivalent to a strong presumption of constitutionality."). As Connelly correctly notes, Steel Valley set his salary based on a classification that paid those with in-state teaching experience more than those with out-of-state experience. He argues that because this classification "serves to penalize the exercise of his right to migrate," it should be subject to strict scrutiny. Steel Valley counters that rational basis review applies.

The state's creation of a classification is not "per se unconstitutional or automatically subject to heightened judicial scrutiny." *Maldonado v. Houstoun*, 157 F.3d 179, 184 (3d Cir. 1998). If a "classification 'neither burdens a fundamental right nor targets a suspect class, we will uphold it so long as it bears a rational relation to some legitimate end.'" *Id.* (quoting *Vacco v. Quill*, 521 U.S. 793, 799 (1997)) (alteration omitted). However, "a classification that trammels fundamental personal rights or is drawn upon inherently suspect distinctions such as race, religion, or alienage . . . must meet the strict scrutiny standard, under which a law must be narrowly tailored to further a compelling government interest." *Schumacher*, 965 F.2d at 1266 (citation, alteration, and internal quotation marks omitted).

Connelly does not argue that Steel Valley's classification affects a suspect class, so strict scrutiny will apply only if it burdens a fundamental right. The right to interstate travel has been recognized as fundamental by the Supreme Court. *Shapiro v. Thompson*, 394 U.S. 618, 630, 638 (1969), *overruled in part on other grounds by Edelman v. Jordan*, 415 U.S. 651 (1974). The Court has also noted that the right to travel has at least three components: (1) "the right of a citizen of one State to enter and to leave another State"; (2) "the right to be treated as a welcome visitor rather than an unfriendly alien when temporarily present in the second State"; and (3) "for those travelers who elect to become permanent residents, the right to be treated like other citizens of that State." *Saenz v. Roe*, 526 U.S. 489, 500 (1999). The parties agree that Connelly's claim implicates only the third *Saenz* component. Therefore, we must determine whether Steel Valley's experience-based classification penalized Connelly's fundamental right to be treated like other

6

Pennsylvania citizens. *See Att'y Gen. of N.Y. v. Soto-Lopez*, 476 U.S. 898, 903 (1986) ("A state law implicates the right travel when . . . it uses 'any classification which serves to penalize the exercise of that right.'" (quoting *Dunn v. Blumstein*, 405 U.S. 330, 340 (1972))).

In this regard, we have recognized that strict scrutiny applies only when the state creates "'distinctions between newcomers and longer term residents.'" *Schumacher*, 965 F.2d at 1267 (quoting *Zobel*, 457 U.S. at 60 n.6); *see also Maldonado*, 157 F.3d at 181–82, 190 (finding Pennsylvania law limiting amount of welfare benefits a family could receive during its first twelve months in the state triggered strict scrutiny). In other words, strict scrutiny applies when the state conditions the receipt of certain government benefits on the duration of the recipient's residence in the state. *See Schumacher*, 965 F.2d at 1267 (analyzing the history of the Supreme Court's treatment of residency-based distinctions). As the District Court correctly noted, in a line of cases implicating the fundamental right to travel from *Shapiro v. Thompson*, to *Saenz v. Roe*, the Supreme Court has applied strict scrutiny only to durational residency requirements. *See Saenz*, 526 U.S. at 492–93, 504 (state law limiting Temporary Assistance for Needy Families funds for new residents); *Mem'l Hosp. v. Maricopa Cnty.*, 415 U.S. 250, 252, 261–62 (1974) (state law requiring indigents to have resided in county for previous twelve months before receiving non-emergency medical care); *Dunn*, 405 U.S. at 334–35 (one-year waiting period to vote); *Shapiro*, 394 U.S. at 629 (one-year waiting period to receive welfare benefits).

When the receipt of a government benefit is conditioned on factors other than duration of residency, we apply rational basis review to determine whether the right to

7

travel has been unconstitutionally burdened. In *Schumacher*, we considered a Pennsylvania bar admission rule that prevented graduates of unaccredited law schools from sitting for the Pennsylvania bar exam unless: they were members of the bar of a state with a reciprocal bar admission policy, were in good standing with that bar, and had practiced law in the state for more than five years. 965 F.2d at 1264, 1268. We applied the rational basis standard because the Pennsylvania bar rule "neither condition[ed] the receipt of in-state benefits on residency nor classifie[d] applicants on the basis of residency." *Id.* at 1267. We noted that the bar rule was unlike the classifications at issue in the *Shapiro* line of cases which, "without exception, involved challenges to state laws that create distinctions between newcomers and longer term residents." *Id.* (citation and internal quotation marks omitted).

As the District Court correctly noted, Steel Valley's classification is based on the location of teaching experience, not duration of residency. Thus, Connelly is being treated no differently than lifelong residents of Pennsylvania. He does not allege that residents of Pennsylvania who taught out of state for nine years prior to working at Steel Valley are given more credit than was he for their comparable out-of-state teaching experience. Nor does Connelly sufficiently rebut Steel Valley's argument that a teacher who resides in Pennsylvania but teaches in a neighboring state would be subject to the same classification as Connelly, should that teacher later decide to seek employment with Steel Valley.

A simple example illustrates the problem with Connelly's argument. Consider a teacher who, for his whole life, has lived in Gettysburg, Pennsylvania, but spent the first decade of his teaching career working at a public school in

8

Frederick, Maryland. If that teacher were to leave the Frederick school and take a position with Steel Valley, he presumably would receive the same credit for his Maryland teaching experience that Connelly received. Thus, only the teacher's lack of Pennsylvania teaching experience—not his residency—would adversely affect his starting pay. For that reason, Steel Valley's classification creates no substantial burden on the right to travel.

This is not to deny that Steel Valley's classification creates some incidental burden on interstate travel. Teachers who reside outside of Pennsylvania and who have years of teaching experience in their home states may elect not to move to Pennsylvania because they might not receive full credit for their teaching experience. As we noted in *Schumacher*, however, a mere "impediment to plaintiffs' freedom of movement" which has "some deterrent effect on nonresident[s] . . . who wish to migrate to Pennsylvania" is not enough to give rise to strict scrutiny. 965 F.2d at 1267; *see also id.* ("[T]he Constitution does not guarantee that citizens of State A may move to State B and enjoy the same privileges they did as citizens of State A, only that citizens of State A may move to State B and be treated on similar terms as the citizens of State B."). Because Steel Valley's salary classification treats citizens differently based only on their teaching experience irrespective of their residency, strict scrutiny does not apply.[1]

---

[1] Connelly also argues that strict scrutiny applies because he has a fundamental right not to be subject to a classification that discriminates between teaching experience in Maryland versus Pennsylvania. This is an incorrect statement of the law. In *Saenz*, the Court explained that the

9

Finally, Connelly urges us to follow *Erisman v. Chartiers Valley School District*, Civ. No. 00-1102 (W.D. Pa. Sept. 17, 2001), which supports his argument that we should apply strict scrutiny to Steel Valley's experience-based salary classification. The facts of *Erisman* and this case are remarkably similar. There, a teacher with twenty-two years of experience in Maryland was hired by a Pennsylvania school district that denied her nine steps of salary scale credit. *Erisman*, slip op. at 1. The magistrate judge reasoned that the classification was subject to strict scrutiny because "[t]he policy would clearly cause greater injury to those who reside out of state and who intend to make Pennsylvania their new place of residence." *Id.* at 8. Therefore, he found that "the practical effect of the district's policy is to impose a substantial burden on interstate migration." *Id.* We decline Connelly's invitation to follow *Erisman* because we are convinced that it was wrongly decided.

The relevant distinction when evaluating a claim asserting a violation of the fundamental right to travel is between long-term and short-term residents, not current residents and *prospective* residents. *See Schumacher*, 965 F.2d at 1267. Indeed, the court in *Erisman* recognized that new Pennsylvania residents were treated the same as longer term residents under the school's policy. *See Erisman*, slip

---

"right to travel embraces the citizen's right to be treated equally in her new State of residence." 526 U.S. at 505. The Supreme Court has never found that a classification based solely on the location of work experience is sufficient to trigger strict scrutiny without a showing of disparate treatment between new and old residents.

10

op. at 8–9 (noting that longer term Pennsylvania teachers' right to interstate travel "is just as surely impaired by this policy as is the citizen of another State selecting to come to Pennsylvania for the first time"). The right to travel simply is not implicated when there is no discrimination based on the duration of one's residency.[2]

In sum, because Connelly's allegations cannot support an inference that Steel Valley penalized him for exercising his right to interstate travel, its salary classification does not implicate a fundamental right. *See Soto-Lopez*, 476 U.S. at 903. Therefore, Steel Valley's decision to provide Connelly with less than full credit for out-of-state teaching experience is subject to rational basis review.

B

---

[2] Connelly also relies on *Hammond v. Illinois State Board of Education*, 624 F. Supp. 1151 (S.D. Ill. 1986). *Hammond* is inapplicable here because the court limited its analysis of an in-state teaching requirement for school superintendent candidates to whether the policy was rationally related to a legitimate state interest and avoided a discussion of the plaintiff's right to travel argument. *See id.* at 1155. Moreover, the court indicated in dicta that the teaching requirement did not implicate the plaintiff's right to travel because it "treats both Illinois and non-Illinois residents equal; both must have prior Illinois teaching experience." *Id.* Thus, *Hammond* actually supports our holding that an experience-based classification that treats both new and old residents equally does not run afoul of the Privileges and Immunities Clause or the Equal Protection Clause.

As we shall explain, Steel Valley's experience-based salary classification is sufficiently tied to the legitimate state purpose of promoting an efficient and effective public school system to pass the rational basis test. Accordingly, we hold that Steel Valley did not violate Connelly's right to travel.

"State laws that neither employ a suspect classification nor impinge a fundamental right are 'entitled to a presumption of validity against attack under the Equal Protection Clause.'" *Schumacher*, 965 F.2d at 1269 (quoting *Parham v. Hughes,* 441 U.S. 347, 351 (1979)). "[W]e will uphold the [law] so long as it bears a rational relation to some legitimate end." *Romer v. Evans*, 517 U.S. 620, 631 (1996). In our evaluation of whether a state action is rationally related to a legitimate state interest, we are "free to consider any conceivable . . . purpose" and "are not limited to considering only the goal stated by the" state actor. *Ramsgate Ct. Townhome Ass'n v. West Chester Borough*, 313 F.3d 157, 160 (3d Cir. 2002) (applying rational basis review to a waste removal ordinance).

The District Court cited two justifications for offering greater compensation to those with in-state teaching experience: valuing familiarity with the Pennsylvania Department of Education's (DOE) policies, procedures, and regulations; and promoting efficiency in the education system. *Connelly*, 2011 WL 5024415, at *7. The DOE has established "rigorous academic standards and assessments to facilitate the improvement of student achievement and to provide parents and communities a measure by which school performance can be determined." 22 Pa. Code § 4.2. The DOE's academic and assessment standards set forth guidelines for teachers in areas including: curriculum and instruction tailored to different grade levels and subjects;

grading and scheduling; standardized testing; and special education. *See id.* § 4.1 *et seq.*

It is reasonable to assume that teachers who have more experience working within Pennsylvania schools have greater familiarity with these regulations and the goals they are expected to accomplish. Beyond familiarity with the regulations, it is also reasonable to assume that teachers with more experience working within the system would have a better grasp on what methods are most successful in achieving the goals the DOE has established. Therefore, a school district may rationally place a premium on teachers who have more experience working within the Pennsylvania school system in order to achieve the legitimate goal of an efficient and effective public education system.

Given the deferential standard we employ when considering a state policy under rational basis review, *see Schumacher*, 965 F.2d at 1269, these reasons suffice to uphold Steel Valley's policy. Therefore, the District Court did not err when it dismissed Connelly's complaint.

IV

Finally, Connelly argues that the District Court erred when it dismissed his complaint with prejudice without giving him the opportunity to amend. "We review a district court decision refusing leave to amend . . . for abuse of discretion." *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 163 (3d Cir. 2010) (citing *Bjorgung v. Whitetail Resort, LP*, 550 F.3d 263, 266 (3d Cir. 2008)). "It does not matter whether or not a plaintiff seeks leave to amend. We have instructed that if a complaint is vulnerable to 12(b)(6) dismissal, a district court must permit a

curative amendment, unless an amendment would be inequitable or futile." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008) (citing *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002)).

Here, the District Court dismissed Connelly's complaint with prejudice because it determined that any amendment would be futile. *Connelly*, 2011 WL 5024415, at *8. We cannot say this was an abuse of discretion. The facts of this case are undisputed. Steel Valley does not challenge Connelly's assertion that his initial salary would have been higher had his teaching experience been in Pennsylvania instead of Maryland. And Connelly concedes (as he must) that this salary classification was based on location of teaching experience rather than state of residence. Finally, though the record is sparse, there is no evidence that Connelly's claim failed due to a lack of factual specificity. *See Shane v. Fauver*, 213 F.3d 113, 116 (3d Cir. 2000) (if a complaint is dismissed "for lack of factual specificity, [plaintiff] should be given a reasonable opportunity to cure the defect, if he can, by amendment of the complaint" (quoting *Darr v. Wolfe*, 767 F.2d 79, 81 (3d Cir. 1985)). Thus, the District Court did not abuse its discretion in denying Connelly leave to amend his complaint.

V

For the reasons stated, we will affirm the District Court's order granting Steel Valley's motion to dismiss.

14