2006 VT 131

**In re Cheryl CONNER**

[917 A.2d 442]

No. 05-495

¶ 1. December 27, 2006. Cheryl L. Conner appeals from a decision of the Vermont Board of Bar Examiners denying her application for admission to the bar on motion. Conner contends the Board erred in declining to credit her law-school teaching experience toward the "active-practice" requirement, arguing that: (1) her experience as director of a clinical internship program qualifies her for admission; (2) Vermont's reciprocity rule compels her admission under the standards of her home state of Massachusetts; and (3) the Vermont Rules of Admission violate her federal constitutional rights. We affirm.

¶ 2. The record reveals the following facts. In August 2005, Conner filed a petition for admission without examination to the Vermont bar. Under our rules of admission, an applicant may be admitted "upon motion without examination" provided that the applicant "has been actively engaged in the practice of law for five of the preceding ten years in one or more jurisdictions of the United States." Vermont Rules of Admission to the Bar § 7(a).[1] Conner's application indicated that she had been licensed to practice law in Massachusetts since 1982. It indicated further that, for six of the immediately

---

[1] This section provides, in pertinent part, as follows:

> Each applicant who has been admitted to the practice of law in another jurisdiction of the United States may be admitted upon motion and without examination in this state provided that at the time of application the applicant has been actively engaged in the practice of law for five of the preceding ten years in one or more jurisdictions of the United States, is currently licensed to practice in at least one such jurisdiction, and is not under suspension or revocation in any jurisdiction.

V.R.A.B. § 7(a).

preceding ten years (August 1995 through July 2001), she had been employed as the assistant director and director of a clinical internship program at Suffolk University Law School in Boston, Massachusetts. After leaving the program in 2001, Conner worked in a succession of positions in Boston, including one year with a "law and dispute resolution firm," ten months with an organization called New Prospects for Justice where she described her duties as "lawyer, consulting and public speaking," and ten months with a research center associated with Northeastern University where she "supervised researchers and conducted legal research." Conner then moved to Vermont, completed her three-month clerkship requirement in early 2005, and since then has worked for herself under the name "New Prospects LLC," describing her duties as "[t]eaching, consulting, [and] advocacy," including handling one case before the Public Service Board.

¶ 3. By letter dated September 8, 2005, the Board informed Conner that law school teaching does not qualify as the "practice of law" under § 7(f) of the rules. That section sets forth several specific "activities" included within the meaning of active practice, including the "[r]epresentation of one or more clients in the private practice of law," service as a lawyer with a government agency, service as a judge or judicial law clerk, and service as "in-house corporate counsel." The section does not, however, include law-school teaching, and this Court has specifically rejected the Board's recommendation to include teaching within the definition of the "practice of law." The Board, accordingly, requested further detailed information from Conner on her previous employment, particularly with respect to the exact nature of her duties as administrative director of the clinical

program at Suffolk University Law School.

¶ 4. Conner responded by letter, dated September 12, 2005, in which she elaborated on her functions as former director of the clinical internship program. She described the position as "overseeing the participation of some 13 faculty members as mentors and 500 placements in or around Massachusetts." As she explained, her duties in this position included "counseling" students who seek an intern position, "contact[ing]" firms in need of legal support, "matching" students with client agencies, teaching a variety of courses on legal practice, reviewing student journals and discussing the issues they raised, and meeting with client agencies to evaluate student performance. Conner also represented that a course she offered on the "integration of spiritual and ethical values within law practice" had gained national recognition, and had resulted in her counseling many lawyers and law students "trying to make sense of their values and religious lives."

¶ 5. After further review, the Board informed Conner, by letter dated October 11, 2005, that her duties as director of the clinical program at Suffolk did not qualify as the active practice of law, and that her petition for admission on motion had, therefore, been denied. This appeal followed.

I.

¶ 6. Conner first asserts that the "practice-based" nature of her clinical teaching experience warrants a "waiver" of the law-teaching exclusion. We evaluate the claim against a well-established regulatory backdrop. Courts maintain a strong interest in ensuring the competency of legal practitioners within their jurisdictions, and to this end enjoy broad power to establish licensing standards for lawyers as officers of the court. See *Goldfarb v. Va. State Bar*, 421 U.S. 773,

792 (1975) (noting that "[s]tates have a compelling interest in the practice of professions within their boundaries, and ... broad power to establish standards for licensing practitioners"); *Hawkins v. Moss*, 503 F.2d 1171, 1175 (4th Cir. 1974) (recognizing that states have a "substantial interest" in establishing rules of qualification for the practice of law within their jurisdiction). Pursuant to this authority, this Court promulgated rules which provide that those who seek admission to the Vermont bar must either successfully complete a bar examination or demonstrate their qualification through a minimal period of active practice in another jurisdiction. See V.R.A.B. §§ 6(a), 7(a).

¶ 7. As we recently observed with respect to the active-practice requirement for admission on motion:

> the focus on the ten-year period immediately preceding the application serves the important public interest of ensuring that the applicant remains currently competent and in good standing .... The ten-year time frame is a generous but reasonable means of assuring that the applicant has achieved and maintained the skills and fitness required for the practice of law.

*Parks v. Bd. of Bar Exam'rs*, 2005 VT 66, ¶ 6, 178 Vt. 599, 878 A.2d 297 (mem.); see also *Lowrie v. Goldenhersh*, 521 F. Supp. 534, 539 (N.D. Ill. 1981) (Illinois rule requiring active practice for five of the seven years preceding an application for admission without examination "provides for a reasonable means to discover factors bearing upon [applicant's] competency"), *aff'd*, 716 F.2d 401 (7th Cir. 1983); *In re Nenno*, 472 A.2d 815, 819-20 (Del. 1983) (noting that the purpose of the Delaware admission-on-motion rule requiring five years active practice im-

mediately preceding the application is "[t]o assure that there has been no diminution of those [practice] skills"); *Weinstein v. W. Va. Bd. of Law Exam'rs*, 394 S.E.2d 757, 760-61 (W. Va. 1990) (upholding Board's denial of admission on motion where, despite applicant's earlier years of experience, she had not actively practiced for five years immediately preceding her application).

¶ 8. Underlying the active practice requirement is the reasonable assumption that lawyers who have been able to sustain themselves for the requisite period of years by representing clients (whether private individuals, government agencies, or corporate entities), or by working in the judicial decision-making process as a judge or law clerk, necessarily possess the skills required to practice law within the State of Vermont. See *In re R.G.S.*, 541 A.2d 977, 980 (Md. 1988) ("The Hallmark of the practicing lawyer is responsibility to clients regarding their affairs, whether as advisor, advocate, negotiator, as intermediary between clients, or as evaluator by examining a client's legal affairs." (quotations omitted)). As one state court has aptly noted, "practice of law [is] a term of art connoting much more than merely working with legally-related matters." *Attorney Grievance Comm'n v. Shaw*, 732 A.2d 876, 882 (Md. 1999) (quotations omitted). The essence of the practicing lawyer's function is the exercise of professional judgment, bringing to bear all of the lawyer's education, experience, and skill to resolve a specific legal problem for a particular client or case in controversy. See *La. State Bar Ass'n v. Edwins*, 540 So. 2d 294, 299 (La. 1989) ("Functionally, the practice of law relates to the rendition of services for others that call for the professional judgment of a lawyer.").

¶ 9. Considered in this light, we are compelled to conclude that Conner's experience as director of the clinical intern-

ship program at Suffolk, where she was primarily responsible for intern placement and placement development, rather than client representation, did not constitute the practice of law. As outlined in her letter to the Board, many of Conner's duties were purely administrative in nature, such as counseling students interested in the clinical program, recruiting firms and agencies for placements, and matching them with student interns. Other described responsibilities related more directly to the teaching of law, including facilitating classes on legal ethics and discussing issues arising from the students' internships, evaluating students' performance with their supervising firms and agencies, and developing a course and materials to integrate ethical values and legal practice. We appreciate the knowledge and skill necessary to succeed in these instructional activities and the administration of clinical programs.

¶ 10. Nevertheless, we perceive a fundamental difference between such work with students and the provision of legal services to clients. While Conner's teaching was apparently conducted against a backdrop of real clients and legal issues handled by her students under the supervision and responsibility of the placement firms and agencies, she does not claim, nor does the record show, that she was counsel of record in these cases or answerable to clients or courts for their progress or resolution. She was not required to analyze issues of any legal complexity in order to resolve an actual controversy or render a professional judgment to an actual client, subject to the fiduciary duties that govern such relationships and the rules of professional responsibility that generally apply to lawyers and judges. However much we may esteem the teaching of such skills, it is not — in our view — the equivalent of active practice for purposes of admission to the bar.

¶ 11. Nor is our conclusion altered by Conner's related assertion that she is entitled to a waiver of the rule requiring active practice in five of the last ten years, when her teaching is considered in combination with her apparently extensive practice experience as an attorney for several government agencies prior to the last ten years. Indeed, we recently considered, but rejected, a similar claim in *Parks*, explaining that we "have not ... previously waived a time requirement for admission on motion under the rules, and do not believe that this case presents such an extraordinary situation that the otherwise salutary rule requiring active practice for at least five of the preceding ten years should be relaxed." 2005 VT 66, ¶ 7. Here, similarly, we perceive no extraordinary circumstances warranting a waiver of the rule.

II.

¶ 12. Conner raises a number of additional claims that we address in turn. First, she claims to be entitled to admission on motion under our reciprocal admission rule because her home state of Massachusetts would admit a Vermont applicant with similar experience. Conner relies on a provision which waives "[a]ny part of the five-year admission [on-motion] requirement" when the applicant's home state "requires fewer than five years admission as a condition of admission upon motion," provided that the applicant has been actively engaged in the practice of law for at least three of the preceding ten years. V.R.A.B. § 7(a). By its plain terms, this provision applies only where the applicant's home state requires *fewer* than five years admission as a condition of admission on motion. The Massachusetts rules requires that applicants for admission on motion must have been admitted in their home state

for at least five years. Mass. Sup. Jud. Ct. Rule 3.01, § 6.1.1. Thus, the waiver provision of § 7(a) is not applicable here.

¶ 13. Conner also contends that Vermont's admission-on-motion rule violates a number of constitutional rights. She claims that the rule discriminates against nonresidents, in violation of the Privileges and Immunities Clause of Article IV, Section 2 of the United States Constitution.[2] The Privileges and Immunities Clause prohibits a state from imposing more stringent requirements for bar admission on nonresidents than residents. *Sup. Ct. of N.H. v. Piper*, 470 U.S. 274, 283-84 (1985). To establish such a constitutional violation, however, it is essential to show actual discrimination on the basis of out-of-state residency. *Sup. Ct. of Va. v. Friedman*, 487 U.S. 59, 64-65 (1988). Here, there is no basis to conclude that the admission-on-motion rule discriminates against nonresidents. The rule applies across the board to attorneys licensed in other jurisdictions without distinction as to whether they are residents or nonresidents of Vermont. Out-of-state attorneys are deprived of no privilege otherwise afforded Vermont residents for admission on motion. Accordingly, we discern no violation. See *Morrison v. Bd. of Law Exam'rs*, 453 F.3d 190, 194 (4th Cir. 2006) (holding that North Carolina rule offering admission on motion to attorneys who have practiced for four years in states affording reciprocal rights to North Carolina attorneys does not violate Privileges and Immunities Clause since it "treats [nonresident applicants] no differently than it treats North Carolina citizens and residents"); *Schumacher v. Nix*, 965 F.2d 1262, 1265 n.4 (3d Cir. 1992) (holding that Pennsylvania rule requiring graduation from accredited law school for admission on motion did not violate rights of California applicants under the Privileges and Immunities Clause "because plaintiffs are required to meet the same requirements for admission to the Pennsylvania bar under the Rule as Pennsylvania graduates of unaccredited law schools"); *Giannini v. Real*, 911 F.2d 354, 357 (9th Cir. 1990) (rejecting out-of-state attorney's claim that requirement to pass California bar violated Privileges and Immunities Clause, observing that "[t]he absence of any disparate treatment of nonresidents is fatal to Giannini's claims"); *Teare v. Comm. on Admission*, 566 A.2d 23, 29-30 (D.C. 1989) (rejecting claim that requirement of graduation from accredited law school violated rights of nonresident aliens under Privileges and Immunities Clause where requirement applied equally to residents and nonresidents alike).

¶ 14. Conner next claims that the admission-on-motion rule violates the Privileges and Immunities Clause by burdening the right to interstate travel. Again, her claim fails for the simple reason that the rule draws no distinction between residents and nonresidents, and thus imposes no burdens on their right to interstate travel. *Morrison*, 453 F.3d at 193 (rejecting claim that admission-on-motion rule violated applicant's constitutional right to travel since it treated residents and nonresidents alike); *Giannini*, 911 F.2d at 357 (holding that lack of disparate treatment of nonresidents or recent arrivals for bar admission was "fatal" to the claim that bar admission requirement burdens right to travel); *Hawkins*, 503 F.2d at 1179-80 ("So long, then, as the State does not subject the migrant attorney, seeking the right to practice in the State, to no more onerous requirements than those imposed on its

---

[2] The Clause provides: "The Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States." U.S. Const. art. IV, § 2.

560

own citizens seeking such right, it cannot be said that the State has violated [Article 4, Section 2].")); *Levanti v. Tippen*, 585 F. Supp. 499, 507 (S.D. Cal. 1984) ("The lack of disparate treatment of non-residents ... eliminates the possibility of a barrier to interstate travel.").[3]

¶ 15. On similar grounds, Conner claims that the admission-on-motion rule contravenes the "dormant" Commerce Clause as a form of in-state economic protectionism.[4] This claim is groundless.

[3] Conner also appears to claim that the law-teaching exclusion from active practice violates Article IV, Section 2, in some fashion because licensed Vermont attorneys may go "inactive" while engaged in teaching and may earn Continuing Legal Education (CLE) credits for certain teaching activities. We fail to see how this argument undermines the State's interest in ensuring that candidates for *admission* to the bar without examination have engaged in the requisite period of active practice. Moreover, the same privilege to assume inactive status or to obtain CLE credits applies to residents and nonresidents alike, and therefore provides no basis for finding an unconstitutional preference under the Privileges and Immunities Clause.

[4] The United States Constitution provides that "Congress shall have Power ... [t]o regulate Commerce ... among the several States ...." U.S. Const. art. I, § 8. Although the Commerce Clause applies expressly only to Congress's power to regulate commerce, it has been interpreted to contain "an implied limitation on the power of the States to interfere with or impose burdens on interstate commerce." *W. & S. Life Ins. Co. v. State Bd. of Equalization*, 451 U.S. 648, 652 (1981). This implied limitation, generally known as the "negative" or "dormant" Commerce Clause, prohibits "economic

As the United States Supreme Court has explained, when a state statute or regulation "even-handedly ... effectuate[s] a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits." *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970). As noted, the admission-on-motion rule imposes no greater burden on nonresident attorneys than resident attorneys, and provides no differential treatment favoring in-state interests over out-of-state interests. Accordingly, we find no Commerce Clause violation. See *Schumacher*, 965 F.2d at 1265 n.4 (rejecting claim that Pennsylvania statute requiring graduation from accredited law school imposed burden on out-of-state attorney's right to compete across state borders); *Giannini*, 911 F.2d at 358-59 (holding that it was not "an unreasonable interference with commerce for attorneys of other states to be required to take the California bar to be able to practice in California"); *Shapiro v. Cooke*, 552 F. Supp. 581, 589 (N.D.N.Y. 1982) (holding that the "Commerce Clause is not offended by a rule which permits some, but not all, out-of-state attorneys to be admitted on waiver of the examination"), *aff'd*, 702 F.2d 46 (2d Cir. 1983).

¶ 16. In an apparent effort to overcome the rule's facial neutrality, Conner also appears to argue that its practical effect is to burden or discriminate against out-of-state attorneys by imposing certain additional travel requirements. While it is true, as Conner notes, that some out-

protectionism," i.e., regulatory measures designed to benefit in-state economic interests by burdening out-of-state competitors. *New Energy Co. of Ind. v. Limbach*, 486 U.S. 269, 273 (1988).

of-state attorneys may be required to travel farther than Vermont residents to complete the three-month clerkship requirement for admission on motion, or to attend CLE classes, she offers no evidence that the distance is substantial for many applicants; indeed, those out-of-state attorneys seeking admission from such nearby states as New Hampshire, New York, or Massachusetts may find their travel to be less burdensome than those residing in certain rural areas of Vermont. See *Tolchin v. Sup. Ct. of N.J.*, 111 F.3d 1099, 1113 (3d Cir. 1997) (holding that New Jersey's mandatory attendance requirement for CLE credit neither discriminated against nonresident attorneys on its face nor effectively burdened interstate commerce where the travel requirement was not shown to be more than a mere inconvenience, and was potentially less burdensome for some nonresidents than residents). Moreover, far from burdening interstate commerce or stifling competition, the admission-on-motion rule tends to facilitate such commerce by easing the admission of out-of-state practitioners to the Vermont bar and thereby encouraging cross-state practice. See *Shapiro*, 552 F. Supp. at 588 (noting that New York's admission-on-motion rule "encourages and enhances" interstate commerce by waiving the bar examination for qualified out-of-state attorneys).

¶ 17. Finally, Conner contends that, by offering admission on motion to some attorneys with a minimum of three years active-practice experience, while requiring five years for others, the rule violates the Equal Protection Clause of the Fourteenth Amendment. As noted, § 7(a) permits attorneys with a minimum of three years active practice to be admitted on motion if the state in which they have practiced offers the same privilege to Vermont attorneys. The rule also specifi-

cally offers admission on motion to attorneys who have practiced for three years in New Hampshire, based on that state's rule affording the same privilege to Vermont attorneys. Even if Conner remained a Massachusetts resident, Massachusetts offers admission reciprocally to Vermonters, not upon three years, but only after five years of active practice. Contrary to Conner's claim, such reciprocity rules are subject to rational-basis review under the Fourteenth Amendment, and as such "have been upheld time and again." *Morrison*, 453 F.3d at 193; see *Scariano v. Justices of the Ind. Sup. Ct.*, 38 F.3d 920, 924 (7th Cir. 1994) (holding that "[t]he right to practice law without taking a bar examination is not a fundamental right for equal protection purposes"); *Schumacher*, 965 F.2d at 1266-67 (noting that attorney licensing classifications are subject to "rational basis" review). As the court in *Hawkins* observed, "[r]eciprocol statutes or regulations, it has been uniformly held, are designed to meet a legitimate state goal and are related to a legitimate state interest. For this reason, they have been found invulnerable to constitutional attack on equal protection grounds." 503 F.2d at 1177-78. The state's interest, as explained in *Hawkins*, is the "undertaking to secure for its citizens an advantage by offering that advantage to citizens of any other state on condition that the other state make a similar grant." *Id.* at 1176-77.

¶ 18. Consistent with these decisions, we recently held in *Parks* that "the three-year reciprocity rule serves the rational and legitimate state purpose of securing advantages for Vermont attorneys by offering a similar opportunity to citizens of other states." 2005 VT 66, ¶ 10. Conner has adduced no evidence or arguments that undermine this holding or require us to revisit our decision. Ac-

cordingly, we find no equal protection violation.

*Affirmed.*