NOTICE:  This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports.  Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2018 VT 118

No. 2018-041

In re Jeffrey G. Oden                                    Original Jurisdiction

                                                         Board of Bar Examiners

                                                         September Term, 2018

Keith Kasper, Chair

Jeffrey G. Oden, Pro Se, Stockbridge, Petitioner-Appellant.

Thomas J. Donovan, Attorney General, Eleanor L.P. Spottswood, Assistant Attorney General,
  and Hannah L. Clarisse, Legal Intern, Montpelier, for Respondent-Appellee.


PRESENT:  Reiber, C.J., Skoglund, Robinson, Eaton and Carroll, JJ.


¶ 1.    **REIBER, C.J.**   Jeffrey G. Oden (applicant) appeals the decision of the Vermont Board of Bar Examiners (Board) to deny his application to sit for the Vermont bar exam.  We affirm.[*]

¶ 2.    In September 2017, applicant requested to sit for the February 2018 Vermont bar exam.  Applicant had previously failed the Maryland bar exam six times before passing it in February 2014.  The Board denied applicant's request based on Vermont Rule of Admission to the Bar 9(b)(4), which states, "An Applicant who has failed the bar examination four times will not be permitted to sit for the [Uniform Bar Examination] in Vermont."  Applicant appealed.

_____

[*] Applicant requested that we permit him to file supplemental briefing.  As the Board has no opposition to the additional briefing, we grant applicant's motion and have considered his supplemental filing.

¶ 3.    Before considering the parties' arguments, we review the context for admission to the bar in Vermont.  The Vermont Constitution grants this Court regulatory authority over the practice of law in Vermont.  Vt. Const. ch. II, § 30; see also In re Grundstein, 2018 VT 10, ¶ 23, __ Vt. __, 183 Vt. 574.  As an exercise of this authority, we have promulgated the Vermont Rules of Admission to the Bar, which are intended to ensure that attorneys granted admission to practice law in Vermont meet our standards for professional competence.  V.R.A.B. 1 ("The public interest is best served and protected and the integrity of the Bar of the Vermont Supreme Court is best maintained when applicants for admission are fairly, impartially, and thoroughly examined as to their professional competence as attorneys . . . ."); see also In re Connor, 2006 VT 131, ¶ 6, 181 Vt. 555, 917 A.2d 442 ("Courts maintain a strong interest in ensuring the competency of legal practitioners within their jurisdiction, and to this end enjoy broad power to establish licensing standards for lawyers as officers of the court.").  The rules also address an applicant's "moral character and fitness" to practice law.  V.R.A.B. 1.

¶ 4.    We established the Board of Bar Examiners to assess professional competence.  V.R.A.B. 1.  We committed to the Board the "duty to determine whether each Applicant has made the necessary showing of Minimal Professional Competence in accordance with these rules warranting the Applicant's admission to the Bar to engage in the practice of law."  V.R.A.B. 1, 3(b).  We established the Character and Fitness Committee to assess "applicants' moral character and fitness."  V.R.A.B. 1.

¶ 5.    One way an applicant may show sufficient professional competence is by obtaining a satisfactory score on the Uniform Bar Exam (UBE) administered in Vermont.  V.R.A.B. 5(b), 9.  However, an applicant may not sit for the UBE in Vermont if the applicant "has failed the bar examination four times."  V.R.A.B. 9(b)(4).  The Rules provide that "[t]he four-attempt limitation may be waived upon a strong showing, to the Board's satisfaction, that the Applicant has substantially improved his or her Exam preparation and there is good cause

2

warranting the requested waiver." V.R.A.B. 9(b)(4). According to the Board's Notes, the Rules do "not allow the Board to grant permission for an Applicant to sit a sixth time." Board's Notes—2017 Amendment, V.R.A.B. 9. The Board's Notes are advisory only. Order Promulgating Amendments, at 2 (June 1, 2017) (unpub. mem.), http://www.vermontjudiciary. org/sites/default/files/documents/PROMULGATED%20Rules%209%28b%29%284%29%2012 %28b%29%20and%2013%28d%29%20of%20the%20Rules%20of%20Admission.pdf [https:// perma.cc/QNY5-YM44].

¶ 6. The arguments in this appeal center on Rule 9(b)(4). Applicant contends that the term "bar examination" is ambiguous and that it refers to the UBE only, not to non-UBE bar exams. The bar examinations he attempted in Maryland were not UBE exams, so he argues the rule does not apply to him. He also claims the rule violates his due-process rights because the four-attempt limitation does not have a rational connection to his fitness or capacity to practice law. The Board counters that Rule 9(b)(4), by its plain language, refers to any bar examination, not only the UBE. The Board also defends the rule as rationally connected to the State's interest in protecting the public. Applicant did not request a waiver of the four-attempt limit, so there is no waiver decision to review, but both he and the Board address whether the Board has authority to grant a waiver after an applicant fails the bar exam five times.

¶ 7. Our review is not deferential. We have granted the Board "broad discretion in enforcing the rules of admission," and thus, generally, "we will not set aside its decision unless there is strong showing of abuse of discretion . . . ." Ball v. Bd. of Bar Exam'rs, 2008 VT 49, ¶ 6, 183 Vt. 628, 950 A.2d 1210. Nonetheless, "[t]he Board is an arm of this Court," Widschwenter v. Bd. of Bar Exam'rs, 151 Vt. 218, 218, 559 A.2d 674, 675 (1989), and we are not bound by its decisions. See Grundstein, 2018 VT 10, ¶ 23 (stating Court is not "bound" to "credibility assessments and findings" of Character and Fitness Committee, even though we "typically defer" to them). "[W]e have plenary authority" to review the Board's decisions

"[b]ecause the Vermont Constitution gives this Court the unique responsibility to regulate the practice of law within this state." Id.; see also V.R.A.B. 25 (stating Court has original jurisdiction over appeals from Board decisions).

¶ 8. In interpreting a court rule, we generally "employ tools similar to those we use in statutory construction." State v. Amidon, 2008 VT 122, ¶ 16, 185 Vt. 1, 967 A.2d 1126. As with statutory construction, we look first to the rule's "plain language," and we construe it "as a whole, looking to the reason and spirit of the law and its consequences and effects to reach a fair and rational result." In re Margaret Susan P., 169 Vt. 252, 262, 733 A.2d 38, 46 (1999).

¶ 9. The Board correctly held that Rule 9(b)(4) does not permit an applicant to sit for the UBE in Vermont after the applicant has failed any state's bar examination or a combination of states' bar examinations at least four times. According to the rule, "[a]n Applicant who has failed the bar examination four times will not be permitted to sit for the UBE in Vermont." V.R.A.B. 9(b)(4). There is nothing in the rule to indicate that the four-attempt restriction applies only to failures to pass the UBE, as opposed to bar examinations generally. Rule 13(a), which governs transfers of UBE scores, refers specifically to the "UBE" throughout and does not use the term "bar examination." Thus, the rules use the term "UBE" when distinguishing between the UBE and bar examinations generally.

¶ 10. Addressing applicant's due-process argument, we hold there is a rational connection between a four-attempt limit and our obligation to protect the public by ensuring professional competence. See Schware v. Bd. of Bar Exam'rs, 353 U.S. 232, 239 (1957) ("A State can require high standards of qualification, such as good moral character or proficiency in its law, before it admits an applicant to the bar, but any qualification must have a rational connection with the applicant's fitness or capacity to practice law."). Applicant may disagree with the policy—and not every state's bar has adopted such a restriction—but that does not make it irrational. See Younger v. Colo. State Bd. of Law Exam'rs, 625 F.2d 372, 377-78 (10th Cir.

4

1980) (holding that state rule barring applicant from sitting for bar exam after three failed attempts had " 'rational connection with the applicant's fitness or capacity to practice law' " and therefore rule did not violate Due Process Clause of Fourteenth Amendment (quoting Schware, 353 U.S. at 239)); Nat'l Conference of Bar Exam'rs, Comprehensive Guide to Admission Requirements 23 (2018), http://www.ncbex.org/ pubs/bar-admissions-guide/2018/mobile/ index.html#p=1 [https://perma.cc/M2RE-3SJH] (listing some states that limit attempts to pass bar exam).

¶ 11. We also consider the parties' arguments regarding whether the Board has authority to waive the four-attempt limitation for applicant, even though he has not requested a waiver. This is counter to our usual practice. See In re 232511 Investments, Ltd., 2006 VT 27, ¶¶ 17-19, 179 Vt. 409, 898 A.2d 109 (explaining that "[w]e must have an actual case or controversy before us to render a decision" because otherwise "any conclusion we might reach would be advisory" and therefore declining to consider requirements for permit type that party had not yet requested). We nonetheless find review appropriate here "in the interests of judicial economy" and because "we are being asked to construe our own rule." See Sarazin v. Vt. Bd. of Bar Exam'rs, 161 Vt. 364, 365, 639 A.2d 71, 71 (1994) (reviewing merits despite untimely appeal of Board decision because "we are being asked to construe our own rules" and "applicant could follow dismissal [of the appeal] with another application [for the same approval the Board had just denied]," so it was "in the interests of judicial economy" to do so).

¶ 12. Rule 9(b)(4) does not limit the Board's authority to grant a waiver after the applicant has failed the bar examination at least five times. The rule itself contains no such limitation. The Board's Notes do: "The [rule] does not allow the Board to grant permission for an Applicant to sit a sixth time." Board's Notes—2017 Amendment, V.R.A.B. 9. The Board's Notes, like Reporter's Notes for our court procedural rules, are helpful to interpretation. See, e.g., State v. Villar, 2017 VT 109, ¶ 12, __ Vt. __, 180 A.3d 588 (relying on Reporter's Notes to

5

Vermont Rules of Criminal Procedure to establish history of changes in rule and its relationship with Federal Rules of Criminal Procedure). But they are advisory only. Order Promulgating Amendments, at 2. Where the Board's Notes explain a rule in a way that is inconsistent with the plain terms of the rule, we are free to disregard it. Here the Board's Notes impose a limitation that exists nowhere in the rule itself. We therefore hold that the Board does have authority to waive the four-attempt limitation, regardless of how many times the applicant has failed the bar exam, where the Board is satisfied that the applicant has shown substantial improvement in exam preparation and "good cause warranting the requested waiver." V.R.A.B. 9(b)(4). If the Board finds this authority unwarranted, it may provide us with a recommended amendment to the rule that plainly limits its authority. See V.R.A.B. 3(c) (requiring Board to submit annual report to Court including "rule changes considered or proposed by the Board").

Affirmed.

FOR THE COURT:

_____

Chief Justice