NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2020 VT 55

No. 2020-012

| | |
|---|---|
| In re Lewis Y. Birt | Original Jurisdiction |
| | Board of Bar Examiners |
| | May Term, 2020 |

Keith Kasper, Chair

Lewis Y. Birt, Pro Se, Philadelphia, Pennsylvania, Petitioner-Appellant.

Thomas J. Donovan, Attorney General, Montpelier, and Andrew R. Strauss,
  Licensing Counsel/Special Assistant Attorney General, Burlington, for Respondent-Appellee.


PRESENT: Reiber, C.J., Robinson, Eaton, Carroll and Cohen, JJ.


¶ 1.     **EATON, J.** Lewis Birt appeals the denial by the Vermont Board of Bar Examiners (BBE) of his application to sit for the 2020 Vermont bar exam. We affirm.

¶ 2.     The relevant facts are as follows. Applicant successfully completed Vermont's Law Office Study (LOS) Program[1] in April 2000. Thereafter, applicant sat for the Vermont bar exam four times between 2002 and 2004, failing each time.[2]

---

[1]   Vermont is among a limited number of states that, as an alternative to law school attendance, "permit[] candidates for admission to the bar to qualify to take the bar examination on the basis of four years of study" supervised by an attorney or judge. Sarazin v. Vt. Bd. of Bar Examiners, 161 Vt. 364, 365 n.1, 639 A.2d 71, 71 n.1 (1994); see also V.R.A.B. 7 (setting forth requirements of LOS Program).

[2]   The 2019 application discloses only two failed attempts at the Vermont bar exam. Applicant neither disputes that he made four attempts nor explains the discrepancy between the number of attempts made and the number disclosed on his application.

¶ 3. In July 2019, applicant filed an application with the BBE to sit for the February 2020 bar exam. Licensing Counsel reviewed the application and raised concerns about both the length of time between applicant's completion of the LOS Program and the 2019 application and the number of applicant's prior unsuccessful examination attempts. In light of those concerns, Licensing Counsel asked applicant if he wished to go forward with the application. Applicant elected to do so, and, in November 2019, supplied additional information directed at the concerns Licensing Counsel raised.

¶ 4. At its December 2019 meeting, the BBE decided to deny applicant's request to sit for the 2020 bar examination. In doing so, it relied on Rule of Admission to the Bar of the Vermont Supreme Court 9(b)(1), which requires an applicant to sit for the bar exam within five years of completing the LOS Program unless the time is extended for good cause, and Rule 9(b)(4), which limits an applicant to four attempts to pass the examination unless the BBE waives the limitation upon a proper showing. This appeal followed.

¶ 5. This Court has broad regulatory authority over the admission of attorneys to practice in Vermont. See In re Grundstein, 2018 VT 10, ¶ 23, 206 Vt. 575, 183 A.3d 574. This plenary authority to review attorney admissions derives from the Vermont Constitution, which provides that this "Court shall have administrative control of all the courts of the state, and disciplinary authority concerning all judicial officers and attorneys at law in the State." Vt. Const. ch II, § 30; see also Grundstein, 2018 VT 10, ¶ 23. Pursuant to this authority, the Court has promulgated the Vermont Rules of Admission to the Bar, which are intended to ensure that attorneys admitted to practice in Vermont meet certain minimum standards of professional competence. In re Oden, 2018 VT 118, ¶ 3, 208 Vt. 642, 202 A. 3d 252 ("The public interest is best served and protected and the integrity of the Bar of the Vermont Supreme Court is best maintained when applicants for admission are fairly, impartially, and thoroughly examined as to their professional competence as attorneys. . . ." (quoting V.R.A.B. 1)); see also In re Conner, 2006

2

VT 131, ¶ 6, 181 Vt. 555, 917 A.2d 442 (mem.) ("Courts maintain a strong interest in ensuring the competency of legal practitioners within their jurisdiction, and to this end enjoy broad power to establish licensing standards for lawyers as officers of the court.").

¶ 6. As we recognized in Oden, the BBE was established to assess professional competence in accordance with the Rules of Admission to the Bar. 2018 VT 118, ¶ 4; see also V.R.A.B. 3(b) (vesting in BBE the "duty to determine whether each Applicant has made the necessary showing of Minimal Professional Competence in accordance with these rules warranting the Applicant's admission to the Bar to engage in the practice of law"). We have granted the BBE broad discretion in enforcing the Rules of Admission, and we generally will not set aside a decision of the BBE unless there is a strong showing of abuse of that discretion, fraud, corruption, arbitrary action, or oppression. Ball v. Bd. of Bar Examiners, 2008 VT 49, ¶ 6, 183 Vt. 628, 950 A. 2d 1210 (mem.). Nonetheless, our review is nondeferential; the BBE is an arm of this Court and we are not bound by its findings or decisions. Oden, 2018 VT 118, ¶ 7; see also In re Monaghan, 126 Vt. 53, 56, 222 A.2d 665, 669 (1966).

¶ 7. Rule 9 pertains to those who, like applicant, seek admission to the Vermont Bar by examination. Subsection (b)(1), in part, provides: "[a]n Applicant must sit for the [Uniform Bar Exam] within five years of graduating from law school or completing the LOS Program, unless the time is extended for good cause."[3] Here, the BBE "concluded that a waiver of the Rule 9(b)(1) requirement was not warranted because [applicant] completed the [LOS] Program almost twenty years ago and had not had significant contact with the law and legal matters since then." Subsection (b)(4), in turn, provides:

> Limitation on Continued Sittings. An Applicant who has failed the bar examination four times will not be permitted to sit for the UBE in Vermont. For purposes of this rule, attempts to achieve a passing score on the UBE count toward the limit of four regardless of where

---

[3] Since 2016, Vermont has been administering the Uniform Bar Exam (UBE) as its written examination. See Board's Notes, V.R.A.B. 9.

the Applicant sat for the UBE. The four-attempt limitation may be waived upon a strong showing, to the Board's satisfaction, that the Applicant has substantially improved his or her Exam preparation and there is good cause warranting the requested waiver.

See also Board's Notes—2017 Amendment, V.R.A.B. 9 (explaining BBE "has the discretion to waive the four-attempt limitation where (1) an Applicant has made a strong showing of improved exam preparation, such that he or she is well prepared to pass the Exam, (2) there is good cause to grant the waiver (e.g., a previously undiagnosed learning disorder), and (3) the limitation would not serve to protect the public"). The BBE determined that waiver of the Rule 9(b)(4) provision, too, was unwarranted because applicant "had not demonstrated that he had substantially improved his bar exam preparation subsequent to his four prior exam failures."

¶ 8. We turn first to applicant's contention that he should have been allowed to sit for the examination despite the passage of nearly two decades since he completed his LOS Program. Applicant does not claim that Rule 9(b)(1) is ambiguous. Rather, he argues that he could not sit for the UBE examination within five years of completion of his LOS Program because the UBE was not adopted in Vermont until 2016. Thus, he argues that it was impossible for him to comply with Rule 9(b)(1) as the BBE interpreted it, and contends that Rule 9(b)(1) is appropriately construed to require him to sit for the UBE within five years of the UBE's adoption in Vermont, rather than within five years of completing the LOS Program.

¶ 9. In interpreting a court rule, we look first at the rule's plain language and construe it "as a whole, looking to the reason and spirit of the law and its consequences and effects to reach a fair and rational result." Oden, 2018 VT 118, ¶ 8 (quoting In re Margaret Susan P., 169 Vt. 252, 262, 733 A.2d 38, 46 (1999)). The intent behind Rule 9(b)(1) is plain: to impose a time limit between when the necessary educational prerequisites have been completed and when an attempt to take the bar exam is made. Nothing in the Rule supports applicant's position that the adoption of the UBE in 2016 or the language of Rule 9(b)(1) afforded him a fresh time period from

completion of his LOS Program to take additional bar exams. Rule 9(b)(1) specifies the taking of the UBE because, after its adoption, the UBE is the only bar examination offered in Vermont. Applicant's argument thus finds no support in the plain language of the rule.

¶ 10.   Nor is the application at issue appropriately evaluated under any other version of the Rules.[4]  Nothing in Rule 9(b)(1) provides any type of "grandfathering" indicating that rules of admission from many years before govern an application made some fifteen years later.  See Grandfather Clause, Black's Law Dictionary (11th ed. 2019) ("A provision that creates an exemption from the law's effect for something that existed before the law's effective date . . . a statutory or regulatory clause that exempts a class of persons or transactions because of circumstances existing before the new rule or regulation takes effect.").  Absent such a provision, the application must be considered under the rules in effect at the time of the application.  Boutin v. Conway, 153 Vt. 558, 565, 572 A.2d 905, 909 (1990) (holding that statute may operate upon facts occurring prior to its adoption because pertinent legislation did not include "grandfather clause" exempting those in plaintiff's circumstances); see also In re VSP-TK / 1-16-18 Shooting, 2019 VT 47, ¶ 25, __ Vt. __, 217 A.3d 560 ("In interpreting a court rule, we employ tools similar to those we use in statutory construction." (quotation omitted)).

¶ 11.   Nothing in the rules provides any waiver of the five-year time limitation for previously unsuccessful applicants.  Applicant could have continued his attempts to pass the bar in the 2004 timeframe, under the rules applicable at that time, and elected not to do so.  His application to take the bar exam in 2020 must be governed by the rules currently in existence.  See

---

[4]  Applicant argues, without citation, that a contract existed between himself and the Vermont Bar, and that the subsequent adoption of the five-year limitation substantively changes this legal agreement, rendering his performance an impossibility.  He does not indicate whether this alleged contract is oral or written and does not recite its material terms.  This inadequate briefing forecloses our review of any argument predicated on the alleged contract.  See Johnson v. Johnson, 158 Vt. 160, 164 n.*, 605 A.2d 857, 859 n.* (1992); V.R.A.P. 28(a).  In any event, we agree with Licensing Counsel that applicant's contract argument is better understood as an assertion that he should be "grandfathered" under the prior rules.

Boutin, 153 Vt. at 565, 572 A.2d at 909. The five-year limitation under the current rules is clear and it applied to the applicant.

¶ 12. The time limitation in Rule 9(b)(1) may be waived by the BBE upon a showing of good cause. Applicant's argument that good cause exists for the BBE to grant a waiver of the time limitation is unclear, but appears to be based upon applicant's assertion that, between 2004 and the present, he has engaged in work providing him with ongoing experience in the law. In considering the application, the BBE concluded applicant had not had significant contact with the law and with legal matters since he completed his LOS Program.

¶ 13. We agree with the BBE's finding that there was no cause to extend the five-year limitation. Applicant has not had any formal legal study since 2004. Applicant's employment history as set forth in his application shows that, since 2007, he has worked as a musician for several years, as a residential real-estate manager for a church, as a teacher of paralegal studies at a for-profit school at some point between 2009 and 2014, and, since 2016, as a court reporter taking notes and assisting Social Security Administration judges. The later supplement to his application briefly stated that he also taught paralegal courses at a second for-profit school, performed temporary legal assignments of an unspecified nature, and assisted others with their legal issues. Applicant indicates his work as a court reporter has given him constant daily exposure to legal terminology, case theories, hearing strategy, hearing procedure, and the law. Applicant bears the burden to establish good cause. V.R.A.B. 9(c)(4) ("Before taking the [UBE], the Applicant must prove fulfillment of the education requirements."). Although applicant's most recent employment touches on some aspects of the law, on this record we cannot say the BBE abused its discretion in finding no good cause and denying applicant's request for a waiver of the five-year time limitation between completion of his LOS Program and his attempt to take the 2020 bar exam. See, e.g., In re Hart, 2008 VT 26, ¶¶ 3, 5, 183 Vt. 602, 949 A.2d 447 (mem.) (adopting BBE's recommendation not to award applicant credit toward LOS Program for studies "occur[ing] between eight to sixteen

6

years earlier" at unaccredited law school because this education was "stale[]" and "outdated").

Absent such a waiver, applicant was ineligible to sit for the 2020 bar examination because he did

not meet the requirements of Rule 9(b)(1), and his application was properly denied.[5]

¶ 14.    Because the failure to meet the requirements of Rule 9(b)(1) dictates the outcome,

we do not consider applicant's challenge to the four-attempt limitation in Rule 9(b)(4).

Affirmed.

FOR THE COURT:

_____

Associate Justice

---

[5] Applicant makes a claim of denial of due process through arbitrary and capricious action without specificity and without any supporting citations. To the extent this claim applies to applicant's argument under Rule 9(b)(1), like his contract argument, we do not consider it due to inadequate briefing. See Johnson, 158 Vt. at 164 n.*, 605 A.2d at 859 n.*; V.R.A.P. 28(a). To the extent it is raised in connection with his argument under Rule 9(b)(4), we do not reach it. But see Oden, 2018 VT 118, ¶ 10 (holding Rule 9(b)(4) does not violate Due Process Clause of United States Constitution because four-attempt limit is rationally related to our obligation to protect the public).