# ENTRY ORDER

2023 VT 14

SUPREME COURT DOCKET NO. 23-AP-048

FEBRUARY TERM, 2023

| | | |
|---|---|---|
| In re O.M. | } | Original Jurisdiction |
| | } | |
| | } | Board of Bar Examiners |

In the above-entitled cause, the Clerk will enter:

¶ 1.     In this expedited appeal, applicant challenges the Board of Bar Examiners' denial of his request for testing accommodations for the February 2023 Vermont Bar Exam.  Given the expedited nature of the appeal, we issued an entry order on February 16, 2023, that contained our mandate only.  We held that the Board acted within its discretion in denying applicant's request.  We now address appellant's arguments.[*]

¶ 2.     The record indicates the following.  Applicant is a third-year law student.  In late November 2022, he sought permission to take the bar exam early, which was granted.  See generally V.R.A.B. 9 (describing application process for early examination).  Applicant also requested testing accommodations—specifically, time-and-a-half in which to take the exam—due to a disability.  See V.R.A.B. 28 (allowing for reasonable accommodations for qualified applicants with disabilities and stating that applicants "seeking a reasonable accommodation may consult the Board's website for further information and instructions"); see also General Instructions for Requesting Test Accommodations for Vermont Bar Examination (Nov. 2020) [hereinafter General Instructions], at 1, available at https://www.vermontjudiciary.org/sites/default/ files/documents/900-00030.pdf [https://perma.cc/639H-JGHY] (stating that "[a] qualified applicant with a disability who is otherwise eligible to take the bar examination, but who cannot demonstrate under standard testing conditions that he/she possesses the knowledge and skills to be admitted to the Vermont Bar, may request reasonable test accommodations"); 28 C.F.R. § 36.309(a) (stating that "[a]ny private entity that offers examinations or courses related to applications, licensing, certification, or credentialing for secondary or postsecondary education, professional, or trade purposes" must "offer such examinations or courses in a place and manner accessible to persons with disabilities or offer alternative accessible arrangements for such individuals.").

¶ 3.     The Board's stated policy is "to administer the bar examination . . . in accordance with the Americans with Disabilities Act [(ADA)], as amended."  General Instructions, supra, at 1.  This includes providing "additional testing time and other accommodations when necessary to ameliorate the impact of the applicant's disability on the applicant's ability to take the bar examination."  Id.; see also 28 C.F.R. § 36.309(b)(2) (recognizing that "[r]equired modifications to an examination may include changes in the length of time permitted for completion of the

---

[*]     On February 3, 2023, we temporarily designated the electronic case file in this case as confidential under V.R.P.A.C.R. 9(a)(1) at applicant's request pending a final ruling and any objection by appellee.  Appellee did not object and we now issue a final ruling designating the electronic case file in this case as confidential.  We refer to applicant by his initials in this public opinion.

examination and adaptation of the manner in which the examination is given"). Applicants requesting accommodations "must submit documentation from one or more qualified professionals that provides information on the diagnosed impairment(s), the applicant's current level of impairment, and the rationale for the accommodations requested on the bar examination," as well as "verifying documentation of his or her history of accommodations, if any." General Instructions, supra, at 1. The instructions state that "[a]ccommodations granted elsewhere do not necessarily entitle an applicant to accommodations on the bar examination, although the Board gives considerable weight to documentation relating to past accommodations received in similar testing situations or in response to an IEP [(Individualized Education Plan)] or Section 504 plan." Id.; see also 28 C.F.R. § 36.309(b)(1)(v) (providing that testing entity must, in considering accommodations request, "give[] considerable weight to documentation of past . . . accommodations . . . received in similar testing situations, as well as such . . . accommodations . . . provided in response to an Individualized Education Program (IEP)" or "Section 504 Plan"). The Board considers accommodation requests for the February Bar Exam timely if received by December 1, but the timeline can be extended for "extraordinary circumstances." General Instructions, supra, at 2; see also V.R.A.B. 9(c)(2)(B) (requiring that applications to take bar exam be received by December 1 for February exam); V.R.A.B. 9(f) (requiring request for accommodations to be "filed no later than the Application deadline, except upon a showing of extraordinary circumstances").

¶ 4. The Board's instructions include various forms that must be submitted in support of a request for testing accommodations. This includes, as relevant here, "a comprehensive evaluation report from the qualified professional who conducted an individualized assessment of the applicant and is recommending accommodations on the bar examination on the basis of a psychological disability." General Instructions, supra, Form 5, at 1. As part of this form, the qualified professional must indicate their recommended testing accommodations and explain the basis for their recommendation. With respect to a request for extra time, the professional must explain "why extra testing time is necessary and describe how [they] arrived at the specific amount of extra time recommended." Id. at 5. Applicants must also provide verifying documentation of their prior accommodations history, if any. Id., Form 1, at 6. Applicants have the burden of establishing their "compliance with the Application process." V.R.A.B. 9(c).

¶ 5. On November 27, 2022, applicant requested testing accommodations using the Board's application form. He provided information related to his disability and explained why he had not filled out certain required Board forms in support of his request, including Form 5 referenced above. Applicant noted that his requested accommodation (time-and-a-half) was provided to him in high school, law school, and for purposes of taking the Law School Admissions Test (LSAT). The National Conference of Bar Examiners was also considering this same accommodation request for the Multistate Professional Responsibility Examination (MPRE). Applicant submitted a 2014 letter from a mental health professional stating that applicant had been diagnosed with Attention-Deficit/Hyperactivity Disorder (ADHD) and an anxiety disorder in 2011; a copy of his Section 504 Student Plan from high school; a letter from the Law School Admission Council identifying his testing accommodations for the LSAT; and information about the testing accommodations he received at law school. An associate dean of applicant's law school also completed a form concerning applicant's law school testing accommodations. This form reflected that applicant had documented diagnoses of ADHD and Generalized Anxiety Disorder (GAD), but it misstated the permanent accommodations that applicant received. Applicant also submitted a November 2020 email from a mental health professional at his university who stated that she had diagnosed applicant with GAD in September 2020 based on an "Assessment Interview." The counselor described the severity of the disorder as moderate and chronic though

2

she noted that it was expected to improve with treatment. The counselor stated that applicant's symptoms impacted his ability to study and take exams. She noted that applicant had had testing accommodations since high school and that he had found time-and-a-half to be effective for him.

¶ 6. Applicant separately explained to the Board that he was unsure about which disability-related form he should complete because his diagnosis did not fit neatly into the forms. He explained that his 2014 evaluation formed the basis of his 504 plan and LSAT accommodations and he did not receive treatment related to the diagnoses because he had learned various coping skills and the accommodations he received helped him focus during examinations. Applicant recounted that in trying to complete the forms, he attempted to use his university's free counseling resources but his request was denied as he did not regularly use their services and they did not provide "one-off" evaluations for purposes of a form like that supplied by the Board. He stated that several other providers declined to complete the form for the same reason. Applicant asserted that it would be unduly burdensome for him to hire someone for the purpose of filling out the Board's form. He asked that the Board approve his requested accommodation based on the uniform accommodations he received in high school, law school, and on the LSAT.

¶ 7. In a January 4, 2023 email, Licensing Counsel told applicant that the Board had denied his accommodations request. As summarized by Licensing Counsel, the Board found that applicant had been diagnosed with anxiety based on one assessment interview without any systemic testing and he had not submitted documentation in support of a diagnosis of ADHD. It further found that applicant failed to tie these conditions to the need for the requested accommodations. It noted that although applicant was provided extra time in law school, that was based on a hand injury rather than anxiety or ADHD.

¶ 8. Applicant moved for reconsideration on January 24, 2023, and included additional materials in support of his request. He explained that his law school had erred in describing his accommodations—an error the school acknowledged—and applicant submitted a corrected statement. This document showed that in law school, applicant received a permanent accommodation of time-and-a-half for examinations due to his GAD diagnosis. Applicant also explained that he had been diagnosed in 2020 with anxiety based on multiple sessions over the course of three months, not on one assessment interview. He provided a statement from his counselor to this effect. Applicant added that the NCBE had granted his request for time-and-a-half for the MPRE. Finally, applicant noted that while a 2014 letter from his provider discussed ADHD, he withdrew the request for any accommodation based on ADHD because he had subsequently received accommodations based solely on GAD.

¶ 9. On February 2, 2023, Licensing Counsel notified applicant via email that the Board had denied his reconsideration request. As summarized by Licensing Counsel, the Board found that applicant failed to file a completed Psychological Disability Verification form (Form 5), which called for evidence of a comprehensive evaluation. It reiterated that applicant failed to tie his anxiety condition to the need for testing accommodations and reasoned that applicant's failure to engage in treatment undermined his request for accommodations. The Board also questioned why applicant relied only on GAD in his reconsideration request and did not include ADHD as he had initially. Finally, the Board cited the December 1, 2022, filing deadline for all materials related to accommodation requests and noted that applicant submitted new materials in support of his motion for reconsideration well outside this deadline. Applicant appealed to this Court under V.R.A.B. 25 and the appeal was expedited at his request.

¶ 10.    Applicant argues that the Board did not follow the ADA or its own rules in reaching its conclusion.  He essentially argues that he provided sufficient information to support his accommodations request and he should not have been required to complete the Board's forms.  He maintains that it was unduly burdensome for him to find a qualified professional to complete the Psychological Disability Verification form.  He further contends that the Board erred and violated the ADA by taking it upon itself to determine if he had a disability and if his disability rendered him eligible for accommodations.  Applicant maintains that the Board should not require proof of systematic testing to support a diagnosis.  According to applicant, the Board also erred by: mischaracterizing his 2020 diagnosis as based on a "single assessment interview"; finding that he did not tie his GAD diagnosis to specific testing accommodations; and faulting him for not receiving ongoing treatment, dropping his request for any accommodation based on ADHD, and the timing of his submissions.

¶ 11.    On review, we recognize the Board's "broad discretion in enforcing the Rules of Admission." In re Birt, 2020 VT 55, ¶ 6, 212 Vt. 500, 237 A.3d 1263.  We nonetheless engage in nondeferential review and are not bound by the Board's findings and decisions. Id.  While we agree with several points raised by applicant, we conclude that the Board acted within its discretion in denying his accommodations request.

¶ 12.    Before turning to the merits, we express our concern about the informal nature of the Board's decisions.  Applicant submitted a written request with supporting materials to the Board.  Rather than receiving a written decision from the Board, he received an email from Licensing Counsel summarizing the Board's rationale.  We recognize the time-sensitive nature of accommodation requests.  Nonetheless, given the important nature of these requests, and mindful of the formal requirements that applicants must follow in requesting accommodations, it would be better practice for the Board to issue a signed written decision that can be provided directly to applicants. Cf. Harris v. Harris, 149 Vt. 410, 414, 546 A.2d 208, 211 (1988) (recognizing benefits of written findings "to assure consideration of the [relevant] factors, facilitate appellate review and satisfy the parties that the case was fully and fairly evaluated").

¶ 13.    Turning to the merits, we find the Board's instructions consistent with the law and we conclude that it acted within its discretion in rejecting applicant's request.

¶ 14.    As set forth above, the Board requires applicants to provide a comprehensive evaluation from a qualified professional in support of an accommodation request.  The qualified professional must directly tie the requested accommodations, including the precise amount of extra time requested, to the applicant's psychological disability. General Instructions, supra, Form 5, at 5.  This is consistent with the ADA Guidance document cited by applicant.  See 28 C.F.R. § 36.309(b); U.S. Dep't of Justice, Civil Rights Div., Disability Rights Section, ADA Requirements (2014) [hereinafter DOJ Guidance] (providing guidance on 28 C.F.R. § 36.309), available at https://archive.ada.gov/regs2014/testing_accommodations.html [https://perma.cc/TB7L-DH7V].  The DOJ guidance states that:

> [t]esting entities should defer to documentation from a qualified professional who has made an individualized assessment of the candidate that supports the need for the requested testing accommodations. . . . Candidates who submit documentation (such as reports, evaluations, or letters) that is based on careful consideration of the candidate by a qualified professional should not be required by testing entities to submit additional documentation.

4

DOJ Guidance, supra; see also Ware v. Wyoming Bd. of L. Examiners, 973 F. Supp. 1339, 1357 (D. Wyo. 1997) (rejecting argument that bar-exam applicant's "treating physician merely had to certify she had the disability in order for her [accommodations] request to be granted," explaining that "[t]he law demands that the Board tailor accommodation to each disabled applicant's specific needs" and, to do so, it must "explain[] the standard testing procedure to the professional who then must make a recommendation regarding how that procedure must be changed to accommodate a specific individual's disability").

¶ 15.   Applicant failed to provide this critical documentation showing that a qualified professional had engaged in "an individualized assessment . . . that supports the need for the requested testing accommodations." DOJ Guidance, supra. Putting aside his failure to complete Form 5 itself, the information that he provided was insufficient. Applicant's counselor did not explain why the particular accommodation that applicant requested was warranted for the bar exam based upon applicant's functional limitations. She merely indicated that applicant had had testing accommodations since high school and that he had found time-and-a-half to be effective for him. The counselor's email was from November 2020, moreover, and she did not directly address "applicant's current level of impairment." General Instructions, supra, at 1. The 2014 letter that applicant submitted referenced a 2011 diagnosis by other entities and similarly did not link applicant's functional limitations to the specific accommodations applicant requested for the bar exam. While applicant contends that he did provide the necessary information for the Board to grant his request, the Board acted within its discretion in concluding otherwise. We reject the suggestion that obtaining the information on Form 5 placed an undue burden on applicant. Without this key information, the Board could not properly evaluate applicant's request. Applicant bore the burden of establishing his current need for an accommodation and he failed to meet that burden here.

¶ 16.   The authority cited by applicant does not persuade us otherwise. Applicant largely relies on the DOJ guidance document referenced above, which discusses the relevant ADA implementing regulations. That document recognizes that "[i]ndividuals with disabilities are eligible to receive necessary testing accommodations" and "[a] testing entity must administer its exam so that it accurately reflects an individual's aptitude, achievement level, or the skill that the exam purports to measure, rather than the individual's impairment (except where the impaired skill is one the exam purports to measure)." DOJ Guidance, supra (explaining that "[u]nder the ADA, an individual with a disability is a person who has a physical or mental impairment that substantially limits a major life activity (such as seeing, hearing, learning, reading, concentrating, or thinking)").

¶ 17.   The guidance further provides that:

> [a]ny documentation if required by a testing entity in support of a request for testing accommodations must be reasonable and limited to the need for the requested testing accommodations. Requests for supporting documentation should be narrowly tailored to the information needed to determine the nature of the candidate's disability and his or her need for the requested testing accommodation. Appropriate documentation will vary depending on the nature of the disability and the specific testing accommodation requested.

Id.; see also 28 C.F.R. § 36.309(b)(iv) (explaining that testing entities must assure that "[a]ny request for documentation, if such documentation is required, is reasonable and limited to the need for the modification, accommodation, or auxiliary aid or service requested"). The guidance provides examples of types of documentation, including: "[r]ecommendations of qualified professionals; [p]roof of past testing accommodations; [o]bservations by educators; [r]esults of psycho-educational or other professional evaluations; [a]n applicant's history of diagnosis; and [a]n applicant's statement of his or her history regarding testing accommodations." DOJ Guidance, supra. It notes that "[d]epending on the particular testing accommodation request and the nature of the disability, . . . a testing entity may only need one or two of the above documents to determine the nature of the candidate's disability and his or her need for the requested testing accommodation." Id. If that is the case, the "testing entity should generally limit its request for documentation to those one or two items and should generally evaluate the testing accommodation request based on those limited documents without requiring further documentation." Id.

¶ 18. In this case, as indicated above, applicant did not submit a sufficient recommendation by a qualified professional as to his requested accommodations. While applicant did provide a corrected statement of the accommodations that he was receiving in law school, the Board was not obligated to grant his request based solely on the accommodations that applicant was receiving in law school and had received previously, even assuming arguendo that the much shorter MPRE and LSAT are equivalent high-stakes tests equivalent to the two-day bar exam. See id. (stating that "[i]f a candidate requests the same testing accommodations he or she previously received on a similar standardized exam or high-stakes test, provides proof of having received the previous testing accommodations, and certifies his or her current need for the testing accommodations due to disability, then a testing entity should generally grant the same testing accommodations for the current standardized exam or high-stakes test without requesting further documentation from the candidate"); see also Ware, 973 F. Supp. at 1357 (stating that while "information regarding past accommodations may be helpful to the Board, the fact that a person has been granted a particular accommodation in the past does not mean that such accommodations are presumably reasonable," explaining that "[e]ach testing agency has an independent duty under the ADA to determine reasonableness on a case-by-case basis" and recognizing that "emphasis should not be on consistency of accommodation, but rather on meeting documented need for individual accommodation"). We are troubled, however, by the Board's failure to discuss applicant's accommodation history once applicant, via his law school, provided the Board with the correct information. Given the "considerable weight" to be given to an applicant's accommodations history, it would have been helpful both for applicant and for purposes of our review to better understand how the Board weighed this information in reaching its conclusion. As noted above, however, applicant's prior accommodation history did not compel the Board to grant his request, as applicant suggests, and the Board acted within its discretion in denying the request given applicant's failure to provide key information regarding his requested accommodations from a qualified professional.

¶ 19. Finally, while it does not change the result here, we agree with several points raised by applicant with respect to the Board's decision. The Board did not explain, and it is not clear, why it believed that applicant's decisions on how to treat his GAD undermined his request for testing accommodations. Cf. DOJ Guidance, supra (explaining that "[u]nder the ADA, an individual with a disability is a person who has a physical or mental impairment that substantially limits a major life activity (such as seeing, hearing, learning, reading, concentrating, or thinking)" and "[t]he determination of whether an individual has a disability generally should not demand extensive analysis and must be made without regard to any positive effects of measures such as medication, medical supplies," or other similar measures). The Board also faulted applicant for

failing to pursue an accommodation based on ADHD. Applicant explained to the Board why he had chosen not to pursue an accommodation based on ADHD but the Board did not acknowledge his explanation. We also agree with applicant that he acted appropriately in filing supplemental materials that responded to evidentiary issues identified by the Board in its initial decision. This included correcting several errors made by third parties. Licensing Counsel encouraged applicant to do so. Under the circumstances, we do not consider these submissions untimely. We note that while the Board observed that these materials were submitted after the filing deadline, it did not indicate that it was refusing to consider them. See id. (recognizing that "the process [for reviewing and approving testing accommodations] should provide applicants with a reasonable opportunity to respond to any requests for additional information from the testing entity, and still be able to take the test in the same testing cycle").

¶ 20. Ultimately, these errors and omissions do not undermine our conclusion that the Board acted within its discretion in denying applicant's request based on his incomplete application. We therefore uphold its decision to deny applicant's request for testing accommodations.

The Board's denial of applicant's request for a testing accommodation for the February 2023 Bar Exam is affirmed.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice


_____
Harold E. Eaton, Jr., Associate Justice


_____
Karen R. Carroll, Associate Justice


_____
William D. Cohen, Associate Justice


_____
Nancy J. Waples, Associate Justice

7